## A02A0894. LEARY v. THE STATE.
(569 SE2d 593)

RUFFIN, Judge.

A jury found DeFrances Leary guilty of theft by taking through breach of fiduciary obligations.[1] On appeal, he challenges the sufficiency of the evidence and the admission of certain evidence at trial. Finding no error, we affirm.

1. In his appeal, Leary no longer enjoys a presumption of innocence, and we view the evidence in the light most favorable to sup-

---

[1] The jury also found Leary guilty of theft by taking property in excess of $500, but the trial court merged that conviction into his conviction for theft by taking as a fiduciary.

port the jury's verdict.[2] We will not disturb that verdict if the evidence authorized the jury to find Leary guilty beyond a reasonable doubt of the crime charged.[3]

Viewed in this light, the evidence shows that, between November 2000 and March 29, 2001, Leary managed a group of apartments owned by Larry Hamrick. According to Hamrick, Leary was responsible for collecting rent, picking up trash, and handling minor maintenance problems.

In March 2001, Hamrick's records indicated that he had not received rent from several tenants. Hamrick questioned one of these tenants, who produced a receipt showing that he had paid Leary $300 in rent. Other tenants also had receipts for rent paid to Leary, but never turned over to Hamrick. When Hamrick inquired about the missing money, Leary denied collecting payments from these tenants. Concerned that Leary had taken the money, Hamrick fired him on March 29, 2001. Hamrick asked Leary to leave the apartments and instructed him not to collect any more rent.

Hamrick subsequently informed his tenants that they should not pay their rent to Leary. During the first week of April, however, tenant Charles Few paid Leary $170 of his April rent in cash. Few showed Hamrick the receipt he received from Leary evidencing this payment. Few later gave Leary an additional $110 in cash to complete his April rent, but did not obtain a receipt for that amount. Hamrick never received Few's April rent money from Leary.

Leary testified at trial. He denied stealing the rent money and claimed that his roommate, LaKeith Rumph, also collected rent at the apartment complex, presumably implying that Rumph could have taken the missing money. Leary also testified that an unidentified man stole $410 in rental payments from him during a January 2001 robbery. The jury, however, apparently did not believe Leary's explanations for the missing money and found him guilty of theft by taking by a fiduciary.

Conflicts in witness testimony are matters of credibility that must be resolved by the jury.[4] "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld."[5] The State presented evidence that Leary — the apartment manager responsible for collecting rents — received rent payments from tenants, but failed to turn those payments over to Hamrick. Based on this evidence, and despite Leary's denials, a rational trier of fact

---

[2] See *Smith v. State*, 253 Ga. App. 504 (559 SE2d 537) (2002).

[3] See id.

[4] See id. at 505.

[5] Id.

could find Leary guilty beyond a reasonable doubt of theft by taking in breach of a fiduciary duty.[6]

2. In his second enumeration of error, Leary argues that the trial court improperly allowed the State to place his character in issue with evidence of his prior theft by taking conviction. We disagree.

On direct examination, Leary's attorney asked him about his duties at the apartment complex. Leary explained that he had worked for Hamrick's construction company for several years. At some point, Hamrick decided that he wanted to employ an apartment manager at the complex. According to Leary:

> [Hamrick] was asking about a guy named Miguel Morris that was working with us also. He asked me how do I know Miguel Morris. I said, Mr. Hamrick, I don't think you should let Miguel Morris do that, because he have [sic] a background of . . . taking things and, you know, just being a violent person. And he said who [do] you think could do it? I said, well, me and LaKeith will do it since we've been working here with you also. I mean, we been [sic] working with you for the longest time. I would like to take the job. And he was like well, okay. . . . So he gave me and LaKeith Rumph an apartment together at the [complex].

On cross-examination, Leary further stated that he told Hamrick about Morris' background "because [he] had been working for Mr. Hamrick for so long, and it [would] make [him] look bad to bring somebody there that [he knew] would take from [Hamrick]."

Evidence of a criminal defendant's bad character or prior convictions generally "is inadmissible unless [the defendant] first puts his character in issue."[7] This general rule, however, "does not . . . preclude the state from rebutting testimony of a defendant by disproving the facts to which he testified, even though this incidentally places his character in issue."[8] In other words, the State may impeach the defendant with evidence reflecting badly on his character, as long as that evidence proves the defendant's specific testimony false.[9]

In this case, the trial court found that Leary placed his character in issue by "leav[ing] the impression with the jury that he . . . [is] trustworthy[,] . . . is not a thief[,] or did not steal." On appeal, Leary

[6] See *Hanson v. State*, 232 Ga. App. 352, 353-354 (2) (a), (b) (501 SE2d 865) (1998) (evidence supported jury's conclusion that restaurant assistant manager responsible for closing out cash register and accounting for money was guilty beyond a reasonable doubt of theft by taking in breach of her fiduciary obligation to the restaurant).

[7] *Porter v. State*, 240 Ga. App. 554, 555 (524 SE2d 259) (1999).

[8] Id.

[9] See id.

argues that his testimony did not implicate his character. Pretermitting whether Leary opened the door to character evidence, however, his theft by taking conviction was properly admitted for impeachment purposes. Leary testified that he counseled Hamrick to give him, rather than Morris, the property manager job because Morris was a thief, and he did not want to recommend someone who would steal from Hamrick. Like the trial court, we find that Leary's testimony left jurors with the impression that *he* would never steal, entitling the State to rebut this testimony — and the false impression — with evidence of his prior theft conviction.[10] Accordingly, the trial court did not err in admitting this impeachment evidence at trial.[11]

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED JULY 22, 2002.

*Robert M. Bearden, Jr.,* for appellant.
*Howard Z. Simms, District Attorney, Eugene Felton, Jr., Assistant District Attorney,* for appellee.

---

[10] See *Payne v. State,* 248 Ga. App. 158, 160 (2) (545 SE2d 336) (2001); *Porter,* supra; *Jester v. State,* 229 Ga. App. 490, 491 (1) (494 SE2d 284) (1997); see also *Lucas v. State,* 234 Ga. App. 534, 538 (3) (507 SE2d 253) (1998) (State allowed to introduce prior DUI convictions "to rebut 'the defendant's impression to the jury that he is a man of good character who would not want to hurt anyone or disobey the law by driving under the influence' "); *Long v. State,* 181 Ga. App. 830, 831 (354 SE2d 190) (1987) (State allowed to impeach defendant to "eras[e] the false impression he had raised in the minds of the jurors" regarding his criminal history).

[11] Although the trial court found that Leary had opened the door to character evidence, and thus admitted the prior conviction "on grounds other than impeachment, 'we have consistently held that a correct decision of a trial court will not be reversed, regardless of the reasons given therefor.' " (Citation omitted.) *Jester,* supra at 491.