A03A2202. McMILLAN v. THE STATE.
(598 SE2d 17)

ANDREWS, Presiding Judge.

Anthony McMillan appeals from the trial court's denial of his amended motion for new trial following his conviction by a jury of violating the Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act, OCGA § 16-14-1 et seq. (Counts 1 and 2), misdemeanor theft by taking (Count 4), forgery (Count 9), false statements (Counts 28 and 30), and practicing dentistry without a license (Counts 22, 25, and 27).[1]

1. In his fourth enumeration, McMillan challenges the legal sufficiency of the evidence as to Counts 4 (theft by taking), 25 and 27 (practicing dentistry without a license), and 28 and 30 (false statements), and we consider this enumeration first.

> On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict. We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Citations omitted.) *Walker v. State*, 258 Ga. App. 333 (574 SE2d 400) (2002).

---

[1] The trial court did find insufficient evidence regarding the forgery count and it is not before us.

So viewed, the evidence was that McMillan met Helen Jackson in New York in 1995. He introduced himself to her as a dentist, telling Jackson he had a practice in Atlanta. Jackson and McMillan began dating and, eventually, McMillan asked Jackson to loan him money to begin a business venture, making dental crowns to be exported to France. Jackson loaned him $6,000 for this purpose. In 1997, Jackson formed a corporation called The Helmac Group, Inc., which was to be used for McMillan's dental practice. Jackson was not a dentist, but a school administrator. It was agreed that the money made from the dental practice was to be paid to Helmac. Jackson traveled back and forth between her home in New Jersey and Georgia and assisted with the financial and managerial duties of Helmac from 1997 until she quit participating in 1998. Jackson found out McMillan was not a dentist in October or November 1998. She had observed him performing dental work on patient Linda Nichols in 1997. Jackson was never repaid her $6,000.

Jackson became aware that a number of checks written by McMillan on the Helmac account were being returned for insufficient funds. By looking at bank statements, Jackson found that money intended for Helmac was going into McMillan's personal account. On several occasions, Jackson saw McMillan performing dental work on patients.

In March 1995, Mark O'Laughlin, owner of Quality First Dental Lab, went to McMillan's office to solicit work for his lab. McMillan told him he was a dentist and showed O'Laughlin around his office. They discussed pricing and O'Laughlin began doing work for McMillan on partial dental frameworks. McMillan became delinquent in paying O'Laughlin and O'Laughlin filed suit against him. In response, McMillan filed an answer signed "Anthony McMillan, D.D.S."

In May 1998, Dr. Susan Savage, a medical doctor, met McMillan at a health fair. McMillan introduced himself to her as Dr. McMillan, a dentist. They eventually became acquaintances and McMillan proposed that they form a dental/medical business together. He told her that he would need no money from her because he had $10 million from various investors. That money, however, did not materialize and Dr. Savage agreed to put money into starting the business. Although McMillan had told Dr. Savage that the corporation would be in both names, when she saw the corporate documents for Family Medical & Dental Centers of America, P.C., they were in her name only. Dr. Savage also saw McMillan perform dental work on a patient.

Dr. Savage became aware that the corporate bank account had insufficient funds to cover an outstanding check. Because she knew that $6,000 had been received by Family Medical & Dental Centers that day, Dr. Savage contacted the person responsible for making the deposit and found out that money had been deposited into McMillan's

personal account. McMillan had been endorsing checks payable to Dr. Savage's company and depositing them into an account on which he was the sole signatory. Dr. Savage was told by McMillan's sister that he did not have a dental license.

Hae Kim, responding to an ad in a Korean newspaper, went to Dental Age, the name of the clinic prior to Dr. Savage's becoming involved with McMillan, from 1995 to 1998. Even when other dentists worked on her, if a problem developed, McMillan was summoned for his advice. On one occasion, due to difficulty removing a temporary appliance from her mouth, McMillan took what she described as a "hammer" and attempted to remove it.

(a) Count 4 alleged that, between November 29, 1996, and March 31, 1999, McMillan "did unlawfully take currency with a value of greater than Five Hundred Dollars ($500.00) and being the property of The Helmac Group, Inc., with the intention of depriving said owner. . . ." McMillan was convicted of misdemeanor theft by taking, i.e., taking currency worth less than $500.

Citing no authority, McMillan argues that the evidence was legally insufficient because the evidence was circumstantial since no auditing of McMillan's personal account and the Helmac account was done and some money from McMillan's account was used to pay some Helmac expenses.

OCGA § 16-8-2 requires the State to show the unlawful taking of property of another with the intention of withholding the property without justification permanently or temporarily.

To support a verdict, circumstantial evidence need exclude only reasonable hypotheses, not exclude every inference or hypothesis except that of a defendant's guilt and whether circumstances are sufficient for that purpose was a question for the jury which, here, resolved the conflicts against McMillan. *Smith v. State*, 257 Ga. 381, 382 (359 SE2d 662) (1987); *Tweedell v. State*, 248 Ga. App. 187, 189 (546 SE2d 306) (2001); *Brown v. State*, 245 Ga. App. 706, 709 (1) (538 SE2d 788) (2000).

The evidence here of theft by taking from Helmac was legally sufficient. *Leary v. State*, 256 Ga. App. 639, 640 (1) (569 SE2d 593) (2002); *Jordan v. State*, 242 Ga. App. 547, 549 (1) (b) (528 SE2d 858) (2000).

(b) Count 25 charged McMillan with practicing dentistry without a license by, between May 1, 1999, and November 1, 1999, "hold[ing] himself out to the public and Susan Savage, as a person entitled to practice dentistry by identifying himself as Doctor of Dental Surgery. . . ."

McMillan contends the evidence was insufficient because, he argues, Dr. Savage knew he was not licensed when they began their business together in May 1999. Dr. Savage's testimony on this point,

however, was not as clear cut as presented by McMillan. She testified that she did not know he was not educated as a dentist until she spoke to McMillan's sister in England in late 1999. McMillan did not tell her he was not licensed until August 1999. Dr. Savage hired him as a consulting dentist, not to do work on patients because she knew he had not renewed his license, indicating that she previously believed he was licensed.

Any conflicts in Dr. Savage's testimony were for the jury to resolve and they resolved them against McMillan. OCGA § 24-9-80; *Jones v. State*, 258 Ga. App. 852, 854 (576 SE2d 18) (2002); *Ramsey v. State*, 214 Ga. App. 743, 744 (1) (448 SE2d 790) (1994).

(c) McMillan also challenges his convictions on Counts 27, 28, and 30, which charged him as follows:

Count 27 — with practicing dentistry without a license by, between October 19, 1995, and February 5, 1996, "unlawfully hold-[ing] himself out to the public and the State and Magistrate Courts of DeKalb County, Case Nos. 95A15886 and 95M45012, as a person entitled to practice dentistry by identifying himself as Doctor of Dental Surgery (DDS) and 'Dr.', when he is not licensed to practice dentistry in the State of Georgia";

Count 28 — with false statements and writings by, between October 19, 1995, and February 5, 1996, "mak[ing] a false document, knowing the same to contain a false, fictitious and fraudulent statement in a matter within the jurisdiction of DeKalb County, Georgia, to-wit: DeKalb County Magistrate Court and DeKalb County State Court, by filing a document identifying himself as Doctor of Dental Surgery (DDS) and 'Dr.', when he is not licensed to practice dentistry in the State of Georgia"; and

Count 30 — with false statements and writings by, on May 22, 1998, making "a false document, knowing the same to contain a false, fictitious and fraudulent statement in a matter within the jurisdiction of DeKalb County, Georgia, . . . by filing a document identifying himself as a dentist by use of the words 'Dental Age' and 'Dr.', when he is not licensed to practice dentistry in the State of Georgia."[2]

These charges all related to documents filed with the magistrate and state courts in litigation filed against McMillan by Quality First Dental Lab, Inc. (Counts 27 and 28) and initiated by Dental Age, McMillan's company, against a former patient (Count 30). McMillan contends there was no evidence that identified him as the person named in the documents.

As to Counts 27 and 28, O'Laughlin, owner of Quality First Dental Lab, testified that he visited dentists' offices to solicit business

---

[2] Counts 28 and 30 were merged with Counts 1 and 2 for sentencing purposes.

for his lab. He met and visited with McMillan at his Dental Age office where McMillan represented himself as a dentist. O'Laughlin made partial dentures for McMillan's clients from March through August 1995. Because he was not fully paid, O'Laughlin filed suit in magistrate court against McMillan. An answer was filed, as well as two letters from Dental Age, purportedly signed by "Dr. A. McMillan" requesting a jury trial and contesting the charges.

Also contained in the record are numerous Dental Age checks, submitted by McMillan to show his repayment of monies to Dr. Savage. From these documents provided by and purportedly signed by McMillan, the jury could compare signatures on the questioned court pleadings regarding O'Laughlin to draw conclusions about whether McMillan signed them. OCGA § 24-7-6; *Huskins v. State*, 245 Ga. 541, 543 (6) (266 SE2d 163) (1980); *Bates v. State*, 18 Ga. App. 718, 724 (2) (90 SE 481) (1916); see *Harrison v. State*, 120 Ga. App. 812, 813 (3) (172 SE2d 328) (1969).

As to Count 30, although no signatures of McMillan are contained in this court filing, "Dr. A. McMillan/Dental Age" is printed on the request for default judgment filed on Dental Age's behalf and it was, again, for the jury to decide if McMillan filed or had someone file on his behalf these documents representing himself as a dentist.

There was legally sufficient evidence regarding these counts.

2. McMillan's first enumeration is that the trial court erred in allowing Jackson to testify to the contents of financial documents.

Jackson was personally involved in managing the financial affairs of Helmac, including handling Helmac's bank account at SunTrust Bank. At times, because she was aware that McMillan had written checks on the account when there were insufficient funds in it, she would deposit her own money into the account. At this point in her testimony, Jackson was asked if she "ever [had] personal knowledge of the funds that should have been going into Helmac going anywhere else?" She answered affirmatively, stating "I finally found documentation that that money was being — ."

Counsel for McMillan objected that "[u]nless he produces some documents showing evidence of that, we're going to make an objection at this time. . . . She's testifying to the contents of a document that is not here that he is showing her just like those other documents 4 through 14." Thereafter, the following occurred:

[State]: Your honor, she's testifying as to where she saw money going other than her account that it's supposed to be going into. I think she's entitled to testify of her own knowledge.

The Court: I'll overrule the objection.

[Jackson]: We had — initially money was coming directly let's say from Cigna, that's an insurance company. And then we did direct deposits for it to go into The Helmac Group. I found documentation that that direct deposit slip was changed to go into an account he controlled at First Union. So, you know, you never see it. It's a direct deposit. He signed it. It goes to the insurance company and then that money is deposited wherever they say. The same thing happened to the Medica[id] checks, same thing, direct deposit into his account.[Defendant]: Your Honor, I'm going to have a continuing objection to this whole line of testimony. Now we're getting into deposit slips and change of deposit slips.[State]: She's testifying to her own personal knowledge of investigating to find out where this money went.[Defendant]: She's testifying to the contents of a document that we do not have here, and that is hearsay.

To the extent that a best evidence objection might have been available to McMillan, any such objection was waived by failure to make it. *Roney v. State*, 192 Ga. App. 760, 762 (1) (386 SE2d 412) (1989); *Rushin v. State*, 63 Ga. App. 646, 648 (1) (11 SE2d 844) (1940).

Even assuming, without deciding, that Jackson's testimony regarding the contents of the account records was hearsay, there was other evidence that also showed these facts. Hayes, a former office worker of McMillan's, called to testify by him, stated that checks which were intended for Helmac were, in fact, deposited by McMillan into his First Union account. There were checks admitted into evidence which also demonstrated this fact, as well as the testimony of Dr. Savage that McMillan diverted funds that should have gone into the Family Medical & Dental Centers account into his First Union account.

No reversible error has been demonstrated.

3. In his second enumeration of error, McMillan argues that prosecution of Counts 4, 22, 27, and 28 were barred by the statute of limitation.

OCGA § 17-3-1 (c) and (d) provide, in relevant part, that prosecutions for felonies "must be commenced within four years after the commission of the crime," and prosecution for misdemeanors "must be commenced within two years after the commission of the crime."

The indictment against McMillan was returned by the grand jury on January 18, 2001.

(a) Count 4, theft by taking, was charged as a felony (over $500), but the jury convicted McMillan only of a misdemeanor (under $500), making the two-year statute of limitation applicable. McMillan was charged with theft by taking between November 1996 and March 31,

1999, and the burden is on the State to prove that a crime occurred within the applicable statute of limitation. *Tarver v. State*, 198 Ga. App. 634, 635 (402 SE2d 365) (1991). The evidence showed that Jackson quit dealing with McMillan and Helmac by 1998, making the last date to charge for misdemeanor theft by taking December 31, 2000. *Austin v. State*, 104 Ga. App. 795 (3) (122 SE2d 926) (1961); see *Erfani v. Bishop*, 251 Ga. App. 20, 21 (1) (b) (553 SE2d 326) (2001).

Count 4 contained no language invoking any statute of limitation exception, which is required if the State intended to rely upon such an exception. *Moss v. State*, 220 Ga. App. 150 (469 SE2d 325) (1996).

The indictment here was not returned until January 18, 2001, and McMillan's conviction on Count 4 is reversed.

(b) The plea in bar filed by McMillan's trial counsel alleged that Counts 22, 27 (practicing dentistry without a license), and 28 (false statements and writings) were misdemeanors, subject to the two-year statute of limitation. At the time of the indictment and trial, practicing dentistry without a license was a misdemeanor. Former OCGA § 43-11-50 was amended effective July 1, 2002, to make the offense a felony. Ga. L. 2002, p. 578, § 1. OCGA § 16-10-20 (false statements and writings), however, is and was a felony subject to the four-year statute of limitation. OCGA § 16-1-3 (5).

Count 22 charged that, between April 9, 1996 and December 22, 1997, McMillan practiced dentistry upon Nichols without a license and that said offense was unknown until November 1999.

Count 27, as set out above, charged that McMillan identified himself as a dentist in court pleadings between October 1995 and February 1996, thereby practicing dentistry without a license, and the offense was unknown until December 2000.

As acknowledged by McMillan, OCGA § 17-3-2 (2) provides that the period within which prosecution must be commenced "does not include any period in which: . . . [t]he person committing the crime is unknown or the crime is unknown."

McMillan argues that, because patient Nichols was first worked on by him in 1996, the statute of limitation began to run then. Nichols, however, also testified that she was worked on over a period of two to three years, her last visit being in November 1999. She did not find out that McMillan was not a dentist until then.

> The knowledge at issue in OCGA § 17-3-2 (2) is the knowledge of the State, including that imputed to the State through the knowledge of the prosecution, the knowledge of someone interested in the prosecution, or the knowledge of one injured by the offense. *Duncan v. State*, 193 Ga. App. 793-794 (389 SE2d 365) [(1989)]; *State v. Brannon*, 154 Ga. App. 285, 287 (267 SE2d 888) [(1980)]. . . . In *Sears v. State*,

182 Ga. App. 480, 481-482 (356 SE2d 72) [(1987)], we held that when the offense is known by an injured party, the statute begins to run and that if a crime against the public involves also a wrong upon an individual, who is not a party to the crime, the knowledge of the victim is imputed to the State, even though the victim does not represent the State in an official capacity. Accord *Womack v. State*, 260 Ga. 21, 22 (389 SE2d 240) [(1990)]. Further, in [*State v. Lowman*, 198 Ga. App. 8 (400 SE2d 373) (1990)], we held that the knowledge of the heirs, as persons interested in [executor] Lowman's prosecution or injured parties, would be imputed to the State. The same reasoning applies in this appeal.

*Lowman v. State*, 204 Ga. App. 655-656 (420 SE2d 94) (1992).

As set out in Division 1, supra, and argued by McMillan, Jackson, the principal of Helmac, became aware that McMillan was practicing dentistry on Nichols without a license in 1998. Therefore, as an interested or injured party, Jackson's knowledge is imputed to the State and McMillan's conviction on Count 22 is reversed.

With regard to Counts 27 and 28, McMillan contends that, because the Attorney General of Georgia, the Georgia Board of Dentistry, and the Magistrate and State courts of DeKalb County were aware that McMillan was practicing dentistry without a license in 1996 and 1997, Count 27 is barred by the two-year statute of limitation and Count 28 by the four-year statute.

On October 1, 1996, a letter was sent to McMillan by the Attorney General's office initiating an administrative proceeding regarding his alleged practice of dentistry without a license by using the "D.D.S." notation on his bank deposit slips and using "Dr." on his business cards. On May 7, 1997, the Board of Dentistry referred for investigation information that Dental Age, owned by McMillan, had sold 2,000 patient records to The Helmac Group, seeking to find out who was The Helmac Group and what dentists had custody of these records.

The State, therefore, had knowledge of McMillan's practicing dentistry without a license by 1997, at the latest and prosecution of Counts 22 and 27 was barred by the two-year statute of limitation. *Lowman v. State*, supra; *State v. Lowman*, supra; *Sears v. State*, supra.

Count 28 charged that, by filing pleadings in the magistrate and state courts between October 19, 1995 and February 5, 1996, representing himself to be a "D.D.S." and "Dr.," McMillan made a false document containing a false statement and this was unknown until December 2000. Again, however, McMillan's representing himself as a dentist was known to the office of the Attorney General and the

Board of Dentistry in 1996 and 1997.[3] Therefore, the State was required to initiate prosecution within four years, or October 2000, and no tolling has been shown. Count 28 must also be reversed. *Lowman v. State*, supra; *State v. Lowman*, supra; *Sears v. State*, supra.

4. McMillan's third enumeration argues that, because Counts 28 and 30 relate to filings in the courts, as does Count 27, Counts 28 and 30 could not be used as RICO predicate acts because they were part of the same transaction referenced in Count 27, i.e., representing himself to the courts as a D.D.S. or Dr.

This ground, however, was not contained in the plea in bar filed below, nor was it otherwise presented to the trial court. Therefore, there is nothing for us to review regarding it. *Robles v. State*, 277 Ga. 415, 418, n. 6 (589 SE2d 566) (2003); *Crawford v. State*, 267 Ga. 543, 545 (6) (480 SE2d 573) (1997); *Holland v. State*, 232 Ga. App. 284, 285 (2) (501 SE2d 829) (1998).

5. McMillan filed a pro se general demurrer on September 27, 2002, the denial of which is also alleged as an error. At that time, however, McMillan was represented by counsel. There is no right to hybrid representation by oneself and counsel. *Potts v. State*, 259 Ga. 812, 815-816 (4) (388 SE2d 678) (1990); *Boone v. State*, 250 Ga. App. 133, 139 (10) (549 SE2d 713) (2001). We will not further consider the general demurrer.

*Judgment affirmed in part and reversed in part. Barnes and Adams, JJ., concur.*

DECIDED MARCH 11, 2004 —<br>RECONSIDERATION DISMISSED APRIL 2, 2004.

*Rodney A. Williams*, for appellant.
Anthony McMillan, *pro se*.
*Jeffrey H. Brickman, District Attorney, Rosemary W. Brewer, Assistant District Attorney*, for appellee.

---

[3] McMillan's argument regarding Count 28 is not addressed by the brief of appellee.