A06A0227. GLIDEWELL v. THE STATE.
(630 SE2d 621)

MIKELL, Judge.

Robert Louis Glidewell was indicted by the grand jury of Jones County for the malice murder of his ex-wife, Carol B. Glidewell. A jury found Glidewell guilty of the lesser included offense of voluntary

---

manslaughter. Glidewell appeals his conviction, contending that the trial court erred (i) in instructing the jury on the lesser included offense of voluntary manslaughter, (ii) in allowing an expert to bolster the testimony of another witness through a scientifically unverifiable principle, (iii) in allowing inadmissible hearsay testimony, and (iv) in allowing the victim's bones into evidence and to go into the jury room. He further claims that he was tried in the wrong county, and that his due process rights were violated by the State's failure to reveal deals made with Glidewell's cellmate in return for the cellmate's testimony. Glidewell also asserts numerous instances of ineffective assistance of counsel. We affirm for the reasons set forth below.

Viewed in a light most favorable to the jury's verdict, the evidence showed that in 1986, Glidewell and the victim were married and living in Hawaii with their son, Damien. The victim began having an affair with Dennis Kempf while Glidewell, who was serving in the military, was deployed to Korea. After Glidewell returned from Korea, the victim divorced Glidewell, and she and Damien moved in with Kempf for six or seven months. The victim, who was concerned about separating Damien from his father, subsequently decided to reconcile with Glidewell.

In 1990, Glidewell and the victim moved from Hawaii to Macon. A month later, Kempf moved from Hawaii to Tampa, Florida, and Kempf and the victim began spending weekends together. During a trip to visit Kempf in Tampa, she told Kempf that she had bought a house with Glidewell, but that it had been a mistake, and that she planned to "do whatever she needed" to sell the house so that she could move to Florida and marry Kempf.

On August 31, 1990, the last day the victim was seen alive, Kempf drove to Macon. He and the victim planned to meet that evening in a hotel and then drive to South Carolina in the morning. Kempf stopped in Valdosta on the way to Macon and called the victim at her office. She told Kempf that she was packed and ready to go. She intended to return home to wait for Glidewell to bring four-year-old Damien home. She and Damien would then go to the hotel.

When Kempf arrived at the hotel the victim was not there. He went to his room and contacted her by telephone shortly before 7:00 p.m. She told Kempf that she was still waiting for Glidewell to bring Damien home. After three hours the victim had not arrived at the hotel, and Kempf began calling the victim's home, but no one answered.

Early the next morning, Kempf drove to the victim's house. Her car was parked in the driveway. Kempf knocked on the front door but there was no answer. He then opened the victim's car door to pop the trunk, inside of which he found two or three of the victim's bags as

well as Damien's suitcase and beach toys. Kempf called the police, who dispatched an officer to the location. After the officer arrived, he found a door to the house unlocked, and he and Kempf entered but found no one home. The victim's purse, which contained her credit cards and driver's license, was on the kitchen table.

When Glidewell subsequently arrived, he told the investigator that he and the victim had argued after he had returned home from Atlanta with Damien. According to Glidewell, the victim had jumped on his back, and he had flipped her over onto the floor and held her there until she became calm. He then left the house with Damien and went to Glidewell's parents' home. Investigators also interviewed Damien, who told them that Glidewell had "got on mommy," and that "I kicked daddy in the head." Glidewell was present at the interview and confirmed Damien's story, also telling Damien to "remember daddy telling you to go back out and get in the truck, that I'd be there in a few minutes."

Within months of the victim's disappearance, Glidewell boxed up the victim's clothes and put them in the attic and sold the victim's car, and when Glidewell's sister asked him if the victim might need those things when she came back, Glidewell responded that the victim would not be coming back. Glidewell remarried, and he told his new wife that the victim was not coming back because "dead people don't come back." He also told her that "you know what happened to [the victim] when she tried to leave me, and no woman is ever leaving me again."

The victim's remains were found during February 1998 in Crawford County, approximately nine miles from Glidewell's parents' home, where Glidewell had gone to spend the night on August 31, 1990. The remains were also 2.2 miles from a house where Glidewell's family had once lived. Glidewell's sister testified that Glidewell was familiar with the area near the grave site because "we learned to drive out there, so we were all over those roads."

The victim's grave site contained jewelry consistent with the jewelry Glidewell had told an investigator that the victim was wearing on August 31, 1990, including an "heirloom ring" worn as a medallion and inscribed with the victim's "Hawaiian" name, Kalola. A few weeks after the body was discovered, the Crawford County sheriff asked Glidewell to come to the sheriff's office to look at the jewelry because at that time the sheriff was still trying to identify the body. Glidewell met with the sheriff in a conference room, looked at the jewelry, and told the sheriff that the jewelry was not the victim's. However, when Glidewell returned home he told his girlfriend that "they found Carol," and he referred to the ring he bought the victim while they were in Hawaii.

After Glidewell was arrested he was placed in a cell with Richard Wilkinson. Wilkinson later testified that Glidewell admitted to killing the victim.

1. Glidewell contends that the trial court erred by instructing the jury on the lesser included offense of voluntary manslaughter because the evidence did not support the instruction. We disagree.

"A charge on voluntary manslaughter should be given if there is some *slight* evidence of voluntary manslaughter." (Citation and punctuation omitted; emphasis in original.) *Mullins v. State*, 270 Ga. App. 271, 275 (4) (605 SE2d 913) (2004). "Voluntary manslaughter requires some evidence that the defendant acted solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." (Citation and punctuation omitted.) *Goforth v. State*, 271 Ga. 700, 701 (1) (523 SE2d 868) (1999); see OCGA § 16-5-2 (a).

Evidence showed that Glidewell arrived at his house to find that the victim intended to immediately take their child from their home and go to a hotel to meet a man with whom she had been carrying on a sexual relationship. A physical altercation ensued. Glidewell argues that fighting before a homicide does not support a voluntary manslaughter charge. See *Nichols v. State*, 275 Ga. 246-247 (2) (563 SE2d 121) (2002). However, the circumstances in this instance show more than a mere physical altercation, and constituted at least slight evidence from which a jury could conclude that Glidewell acted from a sudden, violent, and irresistible passion resulting from a serious provocation. See, e.g., *Goforth,* supra at 701 (1) (it is for the jury to say whether slayer acted from passion or revenge).

2. (a) Glidewell contends that the trial court erred by allowing the State's expert witness, Dr. Paul W. Schenck, to improperly bolster Damien's testimony. We disagree.

Damien, who was then four years old, was interviewed by an investigator two days after the victim's disappearance. Damien told the investigator that "[m]y daddy got on mommy . . . [a]nd I kicked daddy in the head." At trial, Damien, who was then 12, testified that he did not remember what happened that night.

After Damien testified, the State called Dr. Schenck as a witness. Dr. Schenck had been retained by Glidewell and the State to interview Damien before the trial in order to avoid the appearance of bias on the part of the interviewer and in order to avoid subjecting the child to the risks of repeated interviews. Dr. Schenck opined that "I believe that his father's influence, intentional or otherwise, . . . resulted in Damien not remembering any more what took place then."

After Dr. Schenck's testimony, Glidewell moved for a mistrial because Dr. Schenck had based his opinion on facts not in evidence.

Defense counsel did not argue that Dr. Schenck had improperly bolstered Damien's credibility, nor did he object during the course of Dr. Schenck's testimony on that basis. Therefore, Glidewell waived this objection for purposes of appeal. See *Farmer v. State*, 268 Ga. App. 831, 834 (4) (603 SE2d 16) (2004); *Morrison v. State*, 256 Ga. App. 23, 25 (2) (567 SE2d 360) (2002) (appellate review is limited to those grounds presented to and ruled upon by the trial court).

(b) Glidewell further contends that the trial court conducted no inquiry into the foundational basis for Dr. Schenck's testimony. In particular, Glidewell contends that the trial court erred in allowing Dr. Schenck to rely on the principle of "state dependent memory flashback syndrome." We disagree. "The admissibility of expert testimony is a matter within the trial court's sound discretion. We will not reverse the trial court's ruling on such evidence absent an abuse of that discretion." (Citation and punctuation omitted.) *Home Depot U. S. A. v. Tvrdeich*, 268 Ga. App. 579, 581 (1) (602 SE2d 297) (2004). Accord *Riley v. State*, 278 Ga. 677, 683 (4) (604 SE2d 488) (2004).

Before Dr. Schenck testified, the trial court held a hearing outside the presence of the jury in order to, as expressed by the trial court, "establish, yes or no, whether there's . . . a valid scientific theory." During the hearing, Dr. Schenck gave testimony and was examined and cross-examined as to the basis for his opinions. Dr. Schenck stated that in reaching his opinion he applied the principle of "state dependent memory,"[1] which he represented was well recognized in both psychology and psychiatry. After hearing the evidence and arguments from counsel, the trial court decided to allow the testimony.

Glidewell contends that the trial court erred in not inquiring into the acceptance of "state dependent memory" in other jurisdictions. However, in determining whether a scientific principle or technique is competent evidence, our Supreme Court has held that " 'counting heads' in the scientific community is not an appropriate way to determine the admissibility." *Harper v. State*, 249 Ga. 519, 525 (1) (292 SE2d 389) (1982). Accordingly, the trial court was not required to inquire into the number of jurisdictions recognizing the scientific principles on which Dr. Schenck's testimony was based. See id. at 525-526 (1) (admissibility of scientific procedure or technique should be based on evidence available to the trial court). The trial court

---

[1] As explained by Dr. Schenck, state dependent memory is "[t]he notion that memories . . . can be triggered by some aspect of that memory." He used the principle to explain why Damien became upset in two separate incidents when he saw his father on top of a woman in what Damien should have realized was not a threatening situation.

admitted Dr. Schenck's testimony based on the evidence presented at the hearing, and we conclude that the trial court did not abuse its discretion in doing so.

3. Glidewell claims that he is entitled to a new trial because his due process rights were violated by the prosecution's failure to reveal deals made with Glidewell's cellmate Wilkinson, who testified that Glidewell admitted to killing the victim. "The state is under a duty to reveal any agreement, even an informal one, with a witness concerning criminal charges pending against that witness, and a failure to disclose such an agreement constitutes a violation of the due process requirements of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963)." (Citations and punctuation omitted.) *Jolley v. State*, 254 Ga. 624, 629 (5) (331 SE2d 516) (1985).

When Wilkinson testified at Glidewell's trial, a theft by receiving charge was pending against Wilkinson in Peach County. This charge was nolle prossed after Glidewell's conviction. Wilkinson was also incarcerated for a parole violation when he gave testimony against Glidewell. The lead investigator in Glidewell's case later wrote a letter to the parole board in which he recommended that the board consider Wilkinson's assistance in Glidewell's prosecution.

During the hearing on his motion for new trial, Glidewell attempted to show that the nolle pros of the Peach County case and the investigator's letter to the parole board were the result of a pre-existing agreement made to benefit Wilkinson for testimony against Glidewell. However, the testimony of Wilkinson's defense attorney in the Peach County case, the testimony of the prosecutor of the Peach County case, and the testimony of the lead investigator in Glidewell's case showed that there was no agreement by the State to benefit Wilkinson in exchange for his testimony against Glidewell. "The trial court, by denying [Glidewell's] motion for new trial, implicitly concluded that no agreement existed. Based on the foregoing we conclude that such a finding was authorized, and we therefore find no due process violation." (Citation omitted.) *Jolley*, supra at 629 (5).

4. Glidewell contends that the trial court erred by improperly allowing hearsay testimony over the objection of defense counsel. We disagree.

Glidewell points to Kempf's testimony that Glidewell had violated a temporary restraining order "15 or 20" times while Glidewell, Kempf, and the victim had been living in Hawaii. Defense counsel objected to Kempf's reference to the restraining order "if his knowledge of this is based on hearsay." Kempf testified that he knew there was a restraining order and that he personally witnessed the violations. The trial court then overruled defense counsel's objection. Kempf's testimony was not hearsay because it did not rely "mainly on the veracity and competency of other persons." OCGA § 24-3-1 (a).

See *Scott v. State*, 130 Ga. App. 75, 78 (3) (202 SE2d 201) (1973) ("[b]ecause the [witness's] testimony was based upon his personal observation it was not hearsay"). We find no error.

Glidewell claims that the trial court also improperly allowed several other instances of improper hearsay to be admitted into evidence, but trial counsel failed to object, waiving the issue for purposes of appeal. See *Wilson v. State*, 277 Ga. 114, 117 (2) (587 SE2d 9) (2003).

5. Glidewell argues that his conviction must be reversed because Jones County was not the proper venue for the trial, and because the trial court improperly instructed the jury on the law of venue. We disagree.

(a) The trial court charged the jury that "[v]enue, that is, that the crime was committed in Jones County, Georgia," must be proven by the State beyond a reasonable doubt. The trial court then charged the jury with the statutory language of OCGA § 17-2-2 (c) and (h). Glidewell contends that his conviction should be reversed because the trial court's charge was inconsistent with *Napier v. State*, 276 Ga. 769 (583 SE2d 825) (2003). In *Napier*, our Supreme Court, after considering the appellant's argument that a charge based on the verbatim language of OCGA § 17-2-2 (c) and (h) improperly shifted the burden of proof on the issue of venue, held that "in future cases, the better practice will be for trial courts" to refrain from quoting those statutes in charging the jury, but that trial courts should instead use the instruction set forth in the Court's opinion. Id. at 772 (2). However, as the trial at issue here occurred in 1999, the trial court had no access to a jury instruction suggested by our Supreme Court in 2003. Furthermore, the trial court separately charged the jury that the State carried the burden of proving venue. When considered as a whole, the trial court's instruction was not erroneous. See id.

(b) Glidewell further contends that venue could not have been in Jones County because there was no evidence that the fatal blow was delivered to the victim in Jones County and because the defendant's body was found in Crawford County. We disagree. The last time the victim was seen alive she was involved in an altercation with Glidewell at their Jones County home. Glidewell had been provoked by coming home to find that the victim intended to take their four-year-old son from him and go to a hotel where her lover was waiting. If Glidewell did kill the victim and he killed her in a moment of passion, as the jury necessarily found, then the death of the victim at her Jones County home is consistent with this finding. Thus, the jury could have found beyond a reasonable doubt that venue was proper in Jones County because the victim died in Jones County. See *Napier*, supra at 773 (2) (although evidence was conflicting as to where the victim died, the jury was authorized to conclude that the State had proved venue beyond

a reasonable doubt). "In the alternative, the jury was authorized to find, pursuant to OCGA § 17-2-2 (h), that it could not determine in which county the homicide was committed and that the proper venue was [Jones] County because the evidence showed beyond a reasonable doubt that that crime 'might have been committed' in that county." (Citations omitted.) *Cook v. State*, 273 Ga. 828, 830 (2) (546 SE2d 487) (2001).

6. Glidewell claims the trial court erred by allowing the victim's bones into evidence and by allowing her bones to go with the jury during their deliberation. However, the victim's bones were tendered into evidence without objection. The issue is therefore waived on appeal. *Dawson v. State*, 258 Ga. 416, 417 (2) (369 SE2d 760) (1988) (failure to object to evidence when offered waives the right to challenge that evidence on appeal). Furthermore, the transcript indicates the bones did not go into the jury room.

7. Glidewell further contends that he received ineffective assistance of trial counsel.

> In order to prevail on a claim of ineffective assistance, appellant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. Appellant must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, an appellate court gives deference to the lower court's factual findings, which are upheld unless clearly erroneous; the lower court's legal conclusions are reviewed de novo.

(Citations and punctuation omitted.) *Hampton v. State*, 279 Ga. 625, 626-627 (619 SE2d 616) (2005).

(a) Glidewell contends that he received ineffective assistance of counsel because his trial counsel failed to raise a statute of limitation defense. We disagree.

The bill of indictment charged Glidewell with murder. However, the jury convicted Glidewell of the lesser included offense of voluntary manslaughter. There is no statute of limitation for murder, but the statute of limitation for voluntary manslaughter is four years. See OCGA § 17-3-1 (a), (c). Glidewell was indicted on August 4, 1998, more than four years after the date of the crime, August 31, 1990. Therefore, Glidewell argues, his trial attorneys were deficient by failing to raise a statute of limitation defense.

The flaw in Glidewell's argument is that, in Georgia,

[t]he statute of limitations applicable in a criminal case is that which relates to the offense charged in the indictment, and not to any minor offense included therein of which the accused might be found guilty. The provisions of the statute of limitations applicable to an indictment for voluntary manslaughter will not bar a conviction of that offense under an indictment for murder; there being no statutory limitation as to indictments for murder.

(Citations, punctuation and emphases omitted.) *State v. Jones*, 274 Ga. 287, 289 (2) (553 SE2d 612) (2001). Accord *Manning v. State*, 123 Ga. App. 844 (1) (b) (182 SE2d 690) (1971). As the statute of limitation would not bar Glidewell's conviction of voluntary manslaughter as a lesser included offense of murder, his trial attorneys were not ineffective for failing to raise the defense.

Glidewell contends that the better rule is to be found in *McMillan v. State*, 266 Ga. App. 729 (598 SE2d 17) (2004), in which we reversed the defendant's conviction of misdemeanor theft by taking after finding that "Count 4, theft by taking, was charged as a felony (over $500), but the jury convicted McMillan only of a misdemeanor (under $500), making the two-year statute of limitation applicable." Id. at 734 (3) (a). However, Glidewell admits that *McMillan* appears to be inconsistent with applicable Georgia Supreme Court precedent, and we agree with that assessment. Division 3 of *McMillan* is overruled to the extent it is inconsistent with *Jones*, supra, and other decisions of our Supreme Court.

(b) Glidewell also claims his trial attorneys were ineffective for failing to challenge the constitutionality of OCGA § 17-2-2 (h).[2] He contends that this statute, which authorized the jury to find that venue was proper in a county in which the crime might have been committed beyond a reasonable doubt, is defective because the smaller degree of possibility implied by "might" is inconsistent with the proof of venue beyond a reasonable doubt required by our Constitution. See generally *Jones v. State*, 272 Ga. 900, 901 (2) (537 SE2d 80) (2000).

Neither the State nor Glidewell shows that our Supreme Court has directly addressed the issue of the constitutionality of OCGA § 17-2-2 (h); however, our Supreme Court has often relied on the statute in its venue analysis. See *Cook*, supra at 830 (2); *Nelson v. State*, 262 Ga. 763, 764 (2) (426 SE2d 357) (1993). Glidewell's defense

---

[2] "If in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed." OCGA § 17-2-2 (h).

attorneys could not have expected that a challenge to the constitutionality of OCGA § 17-2-2 (h) would be successful, and Glidewell was not denied effective assistance of counsel because they did not pursue the issue. See *Washington v. State*, 271 Ga. App. 764, 765 (1) (610 SE2d 692) (2005) ("the standard for effectiveness of counsel does not require a lawyer to anticipate changes in the law or pursue novel theories of defense") (citation and punctuation omitted).

(c) Glidewell claims that his trial attorneys were ineffective for failing to object to testimony by Glidewell's former spouse that Glidewell was a beneficiary of the victim's life insurance policy. "[I]n order to admit evidence of an insurance policy there must be some independent evidence of a nexus between the crime charged and the existence of the insurance policy." *Stoudemire v. State*, 261 Ga. 49, 50 (3) (401 SE2d 482) (1991). However, defense counsel, through cross-examination of the victim's adult daughter, had previously shown that the daughter had received over $120,000 from the victim's insurance policies, but that she was not sure if Glidewell received any money from the policies. Glidewell's trial counsel had therefore opened the door to the life insurance policy issue by eliciting testimony tending to show that Glidewell had not benefitted from insurance on the victim's life. An objection would not have excluded the testimony concerning the victim's life insurance policy which was subsequently solicited by the prosecutor, and Glidewell's trial counsel were not deficient for failing to make the objection. "Since defendant first opened the door to this line of questioning, he cannot now complain." (Citations and punctuation omitted.) *Givens v. State*, 273 Ga. 818, 822 (3) (546 SE2d 509) (2001). See also *Henry v. State*, 279 Ga. 615, 617 (3) (619 SE2d 609) (2005) ("[f]ailure to make a meritless objection cannot be evidence of ineffective assistance") (citation and punctuation omitted).

(d) Glidewell claims he received ineffective assistance of counsel when his counsel failed to make a contemporaneous objection to the prosecutor's comment in opening argument that Glidewell had failed to contact the police. In particular, Glidewell points to his counsel's failure to object to the prosecutor's statement that "[Glidewell], the estranged husband of the victim . . . , never called the Sheriff's Office, never called the police, wasn't the least bit worried, because he killed her." The general rule is that "a comment upon a defendant's silence or failure to come forward is far more prejudicial than probative. . . . [S]uch a comment will not be allowed even where the defendant has not received *Miranda* warnings and where he takes the stand in his own defense." *Mallory v. State*, 261 Ga. 625, 630 (5) (409 SE2d 839) (1991). However, "the rule prohibiting comments regarding prearrest silence is properly limited to a defendant's silence in the face of questions by an agent of the State or his failure to come forward when

he knew that he was the target of a criminal investigation." (Citations, footnote and emphasis omitted.) *Morrison v. State*, 251 Ga. App. 161, 164 (3) (554 SE2d 190) (2001). See also *Roebuck v. State*, 261 Ga. App. 679, 684 (4) (583 SE2d 523) (2003). In this instance, the prosecutor was comparing the actions of Kempf to Glidewell at the time when the victim became missing, and the prosecutor was not commenting on Glidewell's silence after he became the target of a police investigation. As an objection would have been meritless, his attorneys were not ineffective for failing to object to the prosecutor's statement.

(e) Glidewell contends that his trial attorneys were ineffective for failing to object to inadmissible evidence of Glidewell's bad character. We disagree.

Glidewell complains that his trial counsel allowed Kempf to testify, without objection, that Glidewell broke into Kempf's house in Hawaii to get a camera belonging to the victim, and that Glidewell and Kempf had a confrontation in which they "struggled" and "wrestled." Trial counsel also did not object when the prosecutor asked the victim's daughter if she was protected by the restraining order against Glidewell.

Evidence showed that Kempf was living with the victim when Glidewell allegedly broke into Kempf's home in order to retrieve the victim's camera, and that the victim was present when the two men wrestled. Therefore, Kempf's testimony directly involved the victim and was relevant to shed light on the relationship between Glidewell and the victim and the possible motives for the crime. It follows that Kempf's testimony was admissible as evidence of a prior difficulty between Glidewell and the victim. "[E]vidence of prior difficulties is relevant to the relationship between the victim and the defendant, and admissible to show the defendant's motive, intent, and bent of mind in committing the act against the victim." (Citation omitted.) *Edge v. State*, 275 Ga. 311, 313 (4) (567 SE2d 1) (2002). As the evidence was relevant and admissible, Glidewell's trial attorneys were not ineffective for failing to object. See *Denson v. State*, 259 Ga. App. 342, 345 (3) (577 SE2d 29) (2003).

As to the prosecution's question to the victim's daughter about her inclusion in the restraining order, defense counsel had previously been unable to prevent Kempf from testifying about the restraining order, as discussed in Division 3 above. Even if the trial attorneys' failure to object amounted to ineffective assistance, admission of this cumulative evidence could hardly have prejudiced the outcome of the trial. See *Darnell v. State*, 257 Ga. App. 555, 559 (7) (c) (571 SE2d 547) (2002) (trial court did not clearly err in concluding that counsel's failure to object to evidence cumulative of other admissible evidence did not prejudice the defense).

(f) Glidewell claims that his trial counsel rendered ineffective assistance by failing to request a limiting similar transaction instruction contemporaneously with the testimony of the similar acts. We find no merit in this argument. After discussing the intended instruction with defense counsel, the trial court gave a limiting instruction concerning similar transaction evidence as part of the general charge to the jury. "[Glidewell] has not shown that trial counsel rendered ineffective assistance solely because the request for a limiting instruction was not made until the close of evidence." *Smith v. State*, 270 Ga. 68, 70 (3) (508 SE2d 145) (1998).

(g) Glidewell contends that his trial counsel were ineffective for failing to object when the prosecutor gave his personal opinion as to Glidewell's guilt. Specifically, Glidewell points to his counsel's silence in the face of the prosecutor's statement that "[w]e knew [Glidewell] did it, but you only come into this courtroom, a court of law, with what you can prove."

"It has long been the rule that a district attorney may not state to the jury his personal belief in the defendant's guilt." (Citation omitted.) *Castell v. State*, 250 Ga. 776, 789 (8) (a) (301 SE2d 234) (1983). Arguably, the prosecutor's statement that "we knew [Glidewell] did it" was therefore improper. See *Wyatt v. State*, 267 Ga. 860, 864 (2) (a) (485 SE2d 470) (1997) (a prosecutor's statement to the jury in closing argument that the defendant's "criminal act of shooting his wife, as we know he did," was an improper expression of the prosecutor's personal belief in the defendant's guilt). However, the prosecutor's argument was also consistent with Glidewell's defense that the State and its investigators had assumed that Glidewell was guilty and by doing so had missed the opportunity to investigate other possibilities. One of Glidewell's trial counsel testified in the hearing on motion for new trial that, "the police had focused entirely on [Glidewell], and no one ever figured out . . . where was [Kempf] during all of those critical hours. . . . And I think that was the strength of our defense." She also testified that although she could not recall if a decision was made not to object to the prosecutor's opening argument, that "you always have to be very careful in deciding whether to object during anybody's argument," and that "your objection needs to be theory driven, that it doesn't do any good to stop the forward movement of a trial to win an objection if it doesn't advance the theory of your case." Based on the foregoing, the trial court was entitled to conclude that trial counsel's actions were strategic and did not amount to ineffective assistance. See *Holmes v. State*, 273 Ga. 644, 648 (5) (c) (543 SE2d 688) (2001) (decision by trial counsel not to object to a prosecutor's argument may fall within the ambit of trial strategy).

(h) Glidewell contends that his trial counsel were deficient in failing to object to testimony and argument as to Glidewell's future dangerousness. "It is manifestly improper for a prosecutor to argue to the jury during the guilt-innocence phase of any criminal trial that if found not guilty, a defendant poses a threat of future dangerousness." (Footnote omitted.) *Wyatt*, supra at 864 (2) (b). The issue of a defendant's future threat is irrelevant to the issue of his guilt. Id. at 864-865 (2) (b).

Glidewell first complains of his trial counsel's failure to object to Kempf's testimony that "I had always thought that [Glidewell] was capable . . . of harming [the victim]." In context of Kempf's testimony, Kempf was simply explaining his motives for going to Glidewell's Hawaii residence. It follows that Glidewell's counsel were not deficient in failing to object on the grounds that Kempf was expressing an irrelevant opinion as to Glidewell's future dangerousness.

Glidewell also complains of his trial counsel's failure to object to certain statements made by the prosecutor. During closing argument, the prosecutor acknowledged that an investigator had warned Glidewell's wives and girlfriends that Glidewell was dangerous, and then argued that the investigator had acted properly because otherwise, if there was another victim, "we'd be trying [the investigator] for not forewarning somebody." In context, the prosecutor was responding to the defense's argument that the investigator had acted improperly, not asking the jury to convict Glidewell because Glidewell might be dangerous in the future.

Glidewell further contends that his trial counsel were deficient for failing to object to certain of the prosecutor's references to the testimony of Glidewell's former wives and girlfriends, which was tantamount to commenting on his future dangerousness. In particular, he highlights the prosecutor's statement that: "They really wanted to be here. You know why? Every one of them realizes it could have just as easily been one of them." In context, the prosecutor was arguing that the witnesses wanted to testify and not that Glidewell was likely to do harm in the future if he was not found guilty. Pretermitting whether the argument was otherwise proper, it was not an argument as to future dangerousness, and Glidewell's counsel were not deficient for failing to object on that ground.

(i) Glidewell claims his trial counsel rendered ineffective assistance by failing to move to suppress statements made by Glidewell to law enforcement officers after Glidewell had retained counsel. In particular, Glidewell points to his questioning by the Crawford County sheriff after the remains of the victim had been discovered. The general rule is that

once an accused has expressed his desire to deal with the police only through counsel, he is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. . . . However, the Supreme Court has made clear that "in deciding whether particular police conduct is interrogation, we must remember the purpose behind our decisions in *Miranda* and *Edwards*: preventing government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment." [*Arizona v. Mauro*, 481 U. S. 520, 529-530 (107 SC 1931, 95 LE2d 458) (1987).] Far from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable.

(Citations and punctuation omitted.) *Cook v. State*, 270 Ga. 820, 825-826 (2) (514 SE2d 657) (1999).

The record shows that Glidewell's statements to the sheriff were voluntary. Glidewell was not in custody when he talked to the sheriff, he had not been questioned by law enforcement for several years, and he did not then assert a right to counsel. See, e.g., *Wilson v. State*, 264 Ga. 287, 290 (2) (444 SE2d 306) (1994), overruled in part on other grounds, *Washington v. State*, 276 Ga. 655, 657 (2) (581 SE2d 518) (2003) (where suspect did not reassert his right to counsel, confessions obtained from police initiated interrogation were admissible without violating the suspect's Fifth Amendment rights in light of an intervening break in custody). "Since appellant is alleging that ineffectiveness was exhibited by trial counsel's failure to file a motion to suppress, appellant must make a 'strong showing' that the evidence would have been suppressed had a motion to suppress been filed." (Citation omitted.) *Roberts v. State*, 263 Ga. 807, 809 (2) (e) (439 SE2d 911) (1994). Glidewell has failed to do so.

(j) Glidewell claims that his trial counsel were deficient in failing to request a jury charge with respect to the potential motive, interest, or bias of the State's witnesses. However, the trial court charged that in passing upon credibility of witnesses, the jury should consider all facts and circumstances of the case, including witnesses' "interest or lack of interest." See *Evans v. State*, 233 Ga. App. 85, 86 (2) (503 SE2d 344) (1998). As the charge given adequately covered the possible bias of witnesses, Glidewell has no basis to complain of his counsel's performance.

(k) Glidewell claims his trial attorneys were ineffective for failing to object when a State's witness testified to his belief of the veracity

of another witness. In particular, Glidewell claims that the investigator "testified that he believed [Kempf] to be credible." However, after reviewing the portion of the transcript cited by Glidewell, we see that the investigator gave no opinion as to whether Kempf was telling the truth, but only testified that Kempf's trial testimony was consistent with what Kempf had told the investigator. Pretermitting whether the investigator's testimony was admissible as evidence of a prior consistent statement, an issue which Glidewell does not address, see generally *Baugh v. State*, 276 Ga. 736, 738 (2) (585 SE2d 616) (2003), Glidewell's trial counsel had no basis to object that the investigator improperly gave an opinion as to Kempf's veracity.

(l) Glidewell contends that his trial counsel rendered ineffective assistance by failing to reserve objections to the final charge of the trial court where the trial court (i) failed to charge the jury as to the burden of proof on the affirmative defense of accident and (ii) failed to recharge on "not guilty," as requested by the jury. If we accept Glidewell's contention that his trial counsel were deficient for failing to reserve objections to the trial court's final charge, we must nevertheless conclude that Glidewell was not prejudiced by the trial court's failure to instruct the jury as to the State's burden to disprove the affirmative defense of accident because no evidence was offered in support of accident. "When a defendant raises an affirmative defense *and offers evidence in support thereof*, the State has the burden of disproving that defense beyond a reasonable doubt." (Citation omitted; emphasis supplied.) *Bishop v. State*, 271 Ga. 291 (2) (519 SE2d 206) (1999). See also *State v. Royal*, 247 Ga. 309-310 (275 SE2d 646) (1981) ("[w]here a defendant raises an affirmative defense and testifies to the same, the burden is on the State to disprove the defense beyond a reasonable doubt") (citations omitted). As to Glidewell's contention that the trial court failed to recharge the jury as to "not guilty," the record shows otherwise.[3]

(m) Finally, Glidewell claims that he received ineffective assistance of counsel when his trial counsel failed to object to the prosecutor's argument of facts not in evidence. In particular, Glidewell claims that his trial counsel should have objected because the prosecution's assertion in closing argument that Glidewell had choked the victim to death was not supported by the evidence.

"[T]he prosecutor was entitled to draw reasonable inferences from the evidence during his closing argument, even if those inferences were contrary to the ones that [Glidewell] would have preferred

---

[3] The trial court, in its recharge, instructed the jury: "If you do not believe the Defendant is guilty of any of the offenses charged or if you have any reasonable doubt as to the Defendant's guilt, then it would be your duty to acquit the Defendant, in which event the form of your verdict would be, 'We, the jury, find the Defendant not guilty.' "

the jury to draw." *Fugate v. State*, 263 Ga. 260, 265 (10) (431 SE2d 104) (1993). Evidence showed that Glidewell choked his first wife with his hands until she was almost unconscious. On the evening of the victim's disappearance, Glidewell was involved with a physical altercation with the victim in which he pinned her to the floor. Damien came into the room, and was so upset at what was happening that the four-year-old kicked his father in the head, but Glidewell told the boy to go back out to the truck and wait. Glidewell then drove to his parents' house with Damien, and, while the victim's car and her purse remained at the house, the victim was not seen alive again. Considering the foregoing, the prosecution's argument that Glidewell had choked the victim to death was a reasonable inference to be drawn from the evidence, and Glidewell's trial counsel were not deficient in failing to object to a permissible closing argument.

Based on the above, we conclude the trial court did not clearly err in finding that Glidewell's trial counsel did not render ineffective assistance.

*Judgment affirmed. Ruffin, C. J., Andrews, P. J., Johnson, P. J., Blackburn, P. J., Smith, P. J., Barnes, Miller, Ellington, Phipps, Adams and Bernes, JJ., concur.*

DECIDED APRIL 27, 2006 — ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Brian Steel*, for appellant.
*Fredric D. Bright, District Attorney, Gregory L. Bushway, Assistant District Attorney*, for appellee.