A03A1100. ROEBUCK v. THE STATE.
(583 SE2d 523)

BLACKBURN, Presiding Judge.

Following a jury trial, Ronald Dwayne Roebuck appeals his conviction for aggravated sodomy, aggravated child molestation, and child molestation, contending that: (1) the venire panel was not administered the oath required by OCGA § 15-12-132; (2) the trial court incorrectly charged the jury regarding the prerequisites for aggravated sodomy; (3) the prosecutor was inappropriately allowed to be the interpreter for the victim; and trial counsel rendered ineffective assistance by (4) failing to object when the victim's mother commented on Roebuck's pre-arrest silence; and (5) failing to object when a child abuse investigator allegedly testified regarding the truthfulness of the victim. For the reasons set forth below, we affirm.

Roebuck does not challenge the sufficiency of the evidence in this case. Viewed in the light most favorable to the verdict, the record shows that the five-year-old daughter of Roebuck's girlfriend testified

that Roebuck molested her on numerous occasions. At trial, Roebuck denied the child's accusations, and he claimed that the child had been coached by her father to fabricate her story. The jury rejected Roebuck's defense and convicted him on all counts. Roebuck now appeals the jury's verdict.

As an initial matter, we must note that it took far too long in this case for the trial court to consider Roebuck's motion for new trial. Although Roebuck's motion for new trial was filed on October 18, 1995, it was not heard until September 12, 2002.

> The courts have a duty to the citizens of this state to oversee the criminal justice system and to ensure that those who are accused of crimes are tried expeditiously, and that their constitutional rights are protected. The delay which has occurred in this case is simply not acceptable. The legislature has provided that a defendant must file a motion for new trial within 30 days of the entry of the judgment on the verdict. This and other statutorily established time limits clearly indicate the intention of the legislature that criminal matters be resolved promptly. [Seven] years is too long to take to address a motion that must be filed in thirty days. The judicial branch, prosecutors, and the criminal defense bar all have a duty to meet their respective responsibilities in ensuring that criminal cases are promptly resolved.

*Stone v. State.*[1]

1. Roebuck contends that his convictions must be reversed because there is no evidence of record that the potential jurors for his trial were given the oath required by OCGA § 15-12-132 prior to voir dire. The voir dire, however, was not transcribed in this case. "Absent a transcript of the voir dire, this court must presume that this portion of the trial was conducted in a regular and proper manner." *Campbell v. State.*[2] Moreover, a new trial will not be granted based on a voir dire error unless the movant proves that a juror failed to answer (or to answer honestly) a material question on voir dire and then shows that a correct response would have established a valid basis for a challenge for cause. See *Gainesville Radiology Group v. Hummel.*[3] Roebuck has made no such showing.

This enumeration, therefore, lacks merit.

2. Roebuck contends that the trial court erred in its charge to the jury on the prerequisites for a finding of aggravated sodomy. Specifi-

---

[1] *Stone v. State*, 257 Ga. App. 306, 307 (570 SE2d 715) (2002).
[2] *Campbell v. State*, 253 Ga. App. 325, 326 (2) (558 SE2d 857) (2002).
[3] *Gainesville Radiology Group v. Hummel*, 263 Ga. 91, 94 (428 SE2d 786) (1993).

cally, Roebuck argues that, because his indictment failed to state that the victim was less than 14 years old at the time of the act, the trial court erred by instructing the jury:

> A person commits the offense of sodomy when he performs or submits to any sexual act involving the sex organs of one person and the mouth of another. A person commits the offense of aggravated sodomy when he commits sodomy with force and against the will of the other person. The term "against the will," as used in the definition of aggravated sodomy, means without the victim's consent. *A female under 14 years of age is legally incapable of giving consent to illicit sexual acts. Therefore, the "against the will" element of the offense of aggravated sodomy when performed on or with a child under 14 years of age is automatically supplied and need not be proven by the State.*

(Emphasis supplied.)

In essence, Roebuck argues that, because the indictments failed to indicate that the victim was under the age of 14, the State should have been required to show that, despite the victim's age, she did not consent to the acts of sodomy and that they were "against her will." Roebuck makes no argument regarding the element of force, and we do not consider it, as Roebuck has not challenged the sufficiency of the evidence in this case. See *Blansit v. State*.[4]

To support his contention regarding the "against the will" prerequisite, Roebuck cites *Jenkins v. State*.[5] That case, however, undermines Roebuck's arguments. In *Jenkins*, a case involving the rape of a nine-year-old girl, we found:

> Under OCGA § 16-6-1 (a) (1), a person commits the offense of rape when he has carnal knowledge of a female "forcibly and against her will." Under OCGA § 16-6-1 (a) (2), the offense of rape is committed where a person has carnal knowledge of a female "who is less than ten years of age." Because the indictment charged Jenkins with having had carnal knowledge of [the victim] forcibly and against her will, the State was required to prove these allegations. "The term 'against her will' means without consent; the term 'forcibly' means acts of physical force, threats of death or physical bodily harm, or mental coercion, such as intimidation."

---

[4] *Blansit v. State*, 248 Ga. App. 323, 325 (546 SE2d 81) (2001).
[5] *Jenkins v. State*, 259 Ga. App. 87 (576 SE2d 68) (2003).

[*State v. Collins*.][6] As recognized in [*Collins*, supra], the terms "forcibly" and "against her will" constitute two separate elements in rape cases, and although the fact that a victim is under the age of consent may supply the "against her will" element in a forcible rape case (because it shows that the victim is incapable of giving legal consent), it cannot supply the element of force. [Id. at 42-43.]

Id. at 88.

So contrary to Roebuck's contentions, the fact that the indictment in this case failed to state the age of the victim did not trump the precept that a child under the age of 14 lacks the legal ability to consent to sodomy. The evidence presented to the jury clearly established that the victim in this case was under the age of 14, and, as such, in accordance with *Jenkins*, the State did not have to prove that the sodomy in this case was against the victim's will. Roebuck's enumeration is erroneous.

3. Roebuck contends that the trial court erred by allowing the prosecutor to act as an interpreter for the victim. This argument is specious.

During the victim's testimony, the prosecutor showed her a drawing of a female and asked her what she called the breasts, buttocks, and vagina. The five-year-old victim, who was presumably embarrassed, whispered to the prosecutor that she referred to these body parts as "titties, butt, and tootie," respectively. After the victim whispered her answers, the trial court asked the prosecutor to repeat them for the record, which he did. The trial court then instructed the prosecutor to ask the victim, on the record, if he had repeated her answers correctly. The prosecutor did so, and the victim affirmed that he had accurately repeated her answers. Then, using the same drawings, the prosecutor asked the victim which of her body parts Roebuck touched, and, as before, the prosecutor repeated the victim's answers and asked her to confirm their accuracy. Roebuck made no objection to the procedure used to question the victim, and he did not challenge any of the responses given by the victim personally or through the prosecutor.

While this method was certainly not the preferred method for eliciting testimony from a witness, given the totality of the circumstances, it was not error in this case. Here, the trial court was dealing with a minor witness who was embarrassed by the fact that she had been molested. To facilitate the victim's testimony, the trial court instructed the prosecutor to listen to the child's answers, immedi-

---

[6] *State v. Collins*, 270 Ga. 42, 43 (508 SE2d 390) (1998).

ately repeat them, and then ask the child to verify the answers. By this method, the prosecutor actually *interpreted* nothing. Moreover, prior to the victim's testimony at trial, the State introduced a prior taped interview of the victim in which she described Roebuck's acts of molestation against her. The victim's testimony at trial was merely cumulative of this taped testimony, and, if any of the trial testimony given through the prosecutor varied from the victim's earlier recorded statement, Roebuck could have objected. Roebuck did not, so we must assume that he was satisfied with the victim's testimony.

4. Roebuck contends that his trial attorney rendered ineffective assistance of counsel by failing to object when the victim's mother commented on appellant's pre-arrest silence. Again, we disagree.

A trial court's finding that a defendant has not been denied effective assistance of counsel will be affirmed unless clearly erroneous. *Warren v. State*.[7]

> In order to establish ineffectiveness of trial counsel under *Strickland v. Washington*,[8] [Roebuck] must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable.

(Citation and punctuation omitted.) *Stephens v. State*.[9]

> Furthermore, there is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy. In the absence of testimony to the contrary, counsel's actions are presumed strategic. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous.

(Citation and punctuation omitted.) *Clark v. State*.[10]

During direct examination, the victim's mother testified that, shortly after she learned that her daughter had accused Roebuck of molestation, she confronted Roebuck and asked him to give back the key to her house. The prosecutor then asked how Roebuck responded.

---

[7] *Warren v. State*, 197 Ga. App. 23, 24 (1) (397 SE2d 484) (1990).
[8] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).
[9] *Stephens v. State*, 265 Ga. 120, 121 (2) (453 SE2d 443) (1995).
[10] *Clark v. State*, 239 Ga. App. 245, 248 (5) (520 SE2d 245) (1999).

The victim's mother testified that, at first, Roebuck said nothing, but as he removed his belongings from the house, he stated: "Well, I will tell whatever I need to tell if this comes out." The victim's mother further testified that Roebuck did not admit or deny the allegations to her.

In *Mallory v. State*,[11] our Supreme Court held:

> OCGA § 24-3-36 provides that "Acquiescence or silence, when the circumstances require an answer, a denial, or other conduct, may amount to an admission." We take this opportunity to hold that in criminal cases, a comment upon a defendant's silence or failure to come forward is far more prejudicial than probative. Accordingly, from the date of publication of this opinion, December 26, 1991, in the advance sheets of Georgia Reports, such a comment will not be allowed even where the defendant has not received *Miranda* warnings and where he takes the stand in his own defense.

The rule in *Mallory*, however, is not absolute. "[T]he rule prohibiting comments regarding prearrest silence is properly limited to a defendant's silence *in the face of questions by an agent of the State* or his failure to come forward *when he knew that he was the target of a criminal investigation*." (Footnote omitted.) *Morrison v. State*.[12] Neither is the case here, and this enumeration lacks merit.

5. Roebuck contends that his trial attorney rendered ineffective assistance by failing to object when Henrietta Dickerson, a child abuse investigator for the Department of Family and Children Services, allegedly gave her opinion regarding the veracity of the victim. The record does not support this enumeration.

During direct examination, Dickerson was questioned about the procedures used for interviewing a child. The prosecutor asked Dickerson why a child's parent generally would not be allowed in the same room during the interview. Dickerson responded: "Because we want to be sure that the child is being forthwith, and there is no type of coaching or interference or anything from the parent." Roebuck's trial counsel did not object to this statement.

Then, on cross-examination, Roebuck's trial attorney, who was trying to establish that the victim had been coached by her biological father to accuse Roebuck, asked Dickerson: "Couldn't you assume from [her deference to her father] that she had been coached by her father, and she wanted her father to [answer questions about the

---

[11] *Mallory v. State*, 261 Ga. 625, 630 (409 SE2d 839) (1991).
[12] *Morrison v. State*, 251 Ga. App. 161, 164 (3) (554 SE2d 190) (2001).

sexual conduct with Roebuck]? . . . Isn't that a possibility?" Dickerson responded that she "saw no evidence of coaching" and that the victim had not been coached. Moments later, Roebuck's trial attorney asked Dickerson again whether the victim's behavior was indicative of coaching.

Roebuck's trial attorney testified that he extensively questioned Dickerson about the possibility that the victim had been coached as a tactic to get that defense before the jury. "[A]s a general rule, matters of tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Punctuation omitted.) *Milliken v. State*.[13]

Moreover, the State's questions to Dickerson regarding her interviewing procedure were not posed to elicit Dickerson's opinion on the victim's veracity and were not improper.

> [I]n *Odom v. State*,[14] we explained that: What is forbidden is expert opinion testimony that "directly addresses the credibility of the victim," i.e., "I believe the victim; I think the victim is telling the truth," or expert opinion testimony that implicitly goes to the ultimate issue to be decided by the jury, when such issue is not beyond the "ken" of the average juror, i.e., "In my opinion, the victim was sexually abused." Although the distinction may seem fine to a layman, there is a world of legal difference between expert testimony that "in my opinion, the victim's psychological exam was consistent with sexual abuse," and expert testimony that "in my opinion, the victim was sexually abused." In the first situation, the expert leaves the ultimate issue/conclusion for the jury to decide; in the second, the weight of the expert is put behind a factual conclusion which invades the province of the jury by providing a direct answer to the ultimate issue: was the victim sexually abused?

*Brownlow v. State*.[15]

Thus, contrary to Roebuck's assertion, Dickerson was not asked to directly comment on the veracity of the victim. As such, the questions by the State were not objectionable, and Roebuck's trial counsel was not deficient for failing to object to them.

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

---

[13] *Milliken v. State*, 230 Ga. App. 810, 812 (2) (b) (498 SE2d 127) (1998).
[14] *Odom v. State*, 243 Ga. App. 227, 228 (1) (531 SE2d 207) (2000).
[15] *Brownlow v. State*, 248 Ga. App. 366, 368 (2) (a) (544 SE2d 472) (2001).

DECIDED JUNE 16, 2003 —

*Brian Steel*, for appellant.

*W. Kendall Wynne, Jr., District Attorney, Jeffrey L. Foster, Assistant District Attorney*, for appellee.