A06A0737. POLLIO v. THE STATE.
(629 SE2d 583)

BLACKBURN, Presiding Judge.

Following a jury trial, Christopher Pollio appeals his convictions on one count of aggravated sexual battery and on three counts of child molestation, contending that the trial court erred by: (1) excluding evidence of the victim's prior false accusation of molestation, (2) violating OCGA § 24-3-50 by admitting evidence of an interview with

---

police which he contends was induced by a hope of benefit, and (3) allowing a State's witness to remain in the courtroom during trial in violation of the rule of sequestration. For the reasons that follow, we disagree and affirm.

"On appeal, [Pollio] no longer enjoys a presumption of innocence, and we construe the evidence, and all reasonable inferences therefrom, in a light most favorable to the jury's verdict." *Alexander v. State.*[1] So viewed, the evidence shows that on the weekend following the 2000 Thanksgiving holiday, Pollio's seven-year-old niece, C. P., was visiting Pollio and his wife Leann. Also with C. P. were her younger brother and her father (Pollio's brother), who had recently separated from his wife. On Saturday morning, as C. P. sat on Pollio's lap playing a computer game, Pollio suggested that the room was getting hot and he took off C. P.'s pajama pants. Pollio then wet his fingers in his mouth and repeatedly inserted them into C. P.'s vagina. As Leann approached the computer room from the hallway, Pollio stopped and told C. P. not to tell anyone.

On Saturday night, C. P., who had a good relationship with Leann, asked to sleep with Leann because C. P. missed her mother. Leann slept between C. P. and Pollio, and when Leann went to the bathroom in the middle of the night, Pollio took C. P.'s hand and put it on his penis.

Over the next few days, C. P. told her parents, teacher, and school counselors about the incidents, also reporting that Pollio kissed her with his tongue several times over the course of the weekend. Pollio was interviewed by police, arrested, and charged with one count of aggravated sexual battery and three counts of child molestation. After a jury trial, Pollio was found guilty on all counts and sentenced to serve a total of ten years in prison followed by ten years on probation.

1. In his first enumeration, Pollio contends that the trial court erred in granting the State's motion in limine to exclude evidence of C. P.'s prior false accusation of sexual misconduct. We disagree.

> Evidence of prior false accusations of sexual misconduct made by the prosecutrix is admissible to attack the credibility of the prosecutrix and as substantive evidence tending to prove that the instant offense did not occur. However, before evidence of a prior false accusation can be admitted, the trial court must make a threshold determination outside the presence of the jury that a reasonable probability of falsity exists. Defendants have the burden of coming forward with

---

[1] *Alexander v. State*, 264 Ga. App. 251 (1) (590 SE2d 233) (2003).

evidence at the hearing to establish a reasonable probability that the victim had made a prior false accusation of sexual misconduct. Finally, a trial court's ruling upon the admissibility of such evidence will not be overturned absent an abuse of discretion.

(Citations and punctuation omitted.) *Kelley v. State*.[2]

At trial, the State moved in limine to exclude evidence "that would [relate to Pollio's] allegation of [C. P.'s] prior lies about sexual misconduct." Specifically, the State sought to exclude a portion of a videotaped interview in which C. P. told an investigating police officer that, "one time when I was very, very little, someone touched me like that and I couldn't talk, so I couldn't ever tell anyone because I couldn't talk. I could say funny words. . . . I think it was my uncle. I don't remember if it was my uncle or probably my daddy because they kind of look the same." The trial court granted the State's motion and the videotape was redacted. Before the redacted videotape was played to the jury, Pollio renewed his objection and moved to introduce the redacted portion, proffering testimony by C. P. outside the presence of the jury that, "I think I was talking about when I was a baby because, you know, when they put on a diaper and stuff they have to like clean you up. And so that's probably what I was talking about." The trial court denied Pollio's motion.

In excluding the testimony, the trial court found that a reasonable probability of falsity did not exist under the circumstances and that the statement was not an allegation of sexual misconduct. As the trial court is the ultimate judge of C. P.'s credibility, and in light of C. P.'s explanation of her prior statement, "we cannot conclude that the trial court abused its discretion in excluding the evidence." *Holmes v. State*.[3]

2. Pollio next contends that the trial court erred in admitting a videotape of him being interviewed by police, arguing that the interview was a confession induced by a hope of benefit, rendering it inadmissible under OCGA § 24-3-50.

OCGA § 24-3-50 states that, "[t]o make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." "Unless clearly erroneous, a trial court's findings relating to the admissibility of an incriminating statement will be upheld on appeal." (Punctuation omitted.) *LeMay v. State*.[4]

[2] *Kelley v. State*, 233 Ga. App. 244, 251 (5) (503 SE2d 881) (1998).
[3] *Holmes v. State*, 263 Ga. App. 644, 645 (1) (588 SE2d 825) (2003).
[4] *LeMay v. State*, 265 Ga. 73 (2) (453 SE2d 737) (1995).

Here, Pollio agreed to be interviewed at the police station, accompanied by his attorney, before he was charged.[5] Before the interview, the police interviewer told Pollio and his attorney that she wanted to "hear his side of the story." Pollio argues that this created a hope of benefit, in that he hoped he would not be arrested and charged if he gave the interview. However, "[i]t is not improper for the police to encourage a suspect to help [himself] by telling the truth," or share his "side of the story." *Taylor v. State.*[6] Further, no promises were made to Pollio regarding arrest or sentencing, and, although it did not happen in this case, it "does not render a statement involuntary for the police to tell a suspect that the trial judge may consider [his] truthful cooperation with the police." Id. at 273 (2); see *Frei v. State*[7] ("we have held that a confession is not tainted because a suspect confesses only after the officer tells him, 'I want to help you,' or after the officer says . . . he will inform the prosecutor and 'it might help' ") (citation omitted). Thus, any inference Pollio may have unilaterally drawn regarding the benefit of talking to police did not render the interview inadmissible under OCGA § 24-3-50.

Moreover, Pollio's videotape "reveals that [Pollio] was not threatened or coerced and that the interview lasted [approximately] one hour." *Taylor v. State,* supra at 274 (2). Accompanied by his lawyer, Pollio asked for and received drinking water during the interview. Under these circumstances, the trial court did not err in admitting the videotaped interview.

3. Finally, Pollio contends that the trial court erred by allowing the chief investigator to remain in the courtroom seated with counsel for the State even though the court had invoked the sequestration rule. We disagree.

"The rule of sequestration provides each party shall have the right to have the witnesses of the other party examined out of the hearing of each other.[8] . . . The trial judge is vested with broad discretionary powers in administering the rule of sequestration, which will not be controlled unless manifestly abused." (Punctuation omitted.) *Williams v. State.*[9]

Prior to making its opening statement, the State invoked the rule of sequestration, objecting to the presence of Pollio's wife, who later testified during the trial. Although he did not object at trial, Pollio

---

[5] Pollio did not confess during the interview, but he did admit that he was in the room alone with C. P. and that at one point she sat on his lap without her pajama pants on, thus making the interview inculpatory.

[6] *Taylor v. State,* 274 Ga. 269, 270, 273 (2) (553 SE2d 598) (2001).

[7] *Frei v. State,* 252 Ga. App. 535, 537 (2) (b) (557 SE2d 49) (2001).

[8] OCGA § 24-9-61.

[9] *Williams v. State,* 277 Ga. 853, 857 (5) (596 SE2d 597) (2004).

now complains that the lead investigating officer was seated at counsel's table with the State at trial. "A party can not during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later." *Joyner v. State.*[10] See *Smith v. State.*[11] Therefore, this issue was not preserved for appeal. Nevertheless, we note that it is not an abuse of a trial court's discretion to allow "the chief investigating officer to remain in the courtroom during the testimony of other witnesses for the prosecution," despite the invocation of the rule of sequestration. *Scully v. State.*[12]

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED APRIL 11, 2006.

*Mary Erickson,* for appellant.
*David McDade, District Attorney, Brian K. Fortner, Assistant District Attorney,* for appellee.

---

[10] *Joyner v. State,* 208 Ga. 435, 438 (2) (67 SE2d 221) (1951).
[11] *Smith v. State,* 277 Ga. 213, 219 (16) (586 SE2d 639) (2003).
[12] *Scully v. State,* 256 Ga. 683, 685 (3) (353 SE2d 29) (1987).