### A08A0198. GIBSON v. THE STATE.
(661 SE2d 850)

MIKELL, Judge.

A DeKalb County jury convicted Donald Mark Gibson of aggravated assault, two counts of aggravated battery, and criminal damage to property in the first degree. Following the denial of his motion for new trial, Gibson appeals, contending that he received ineffective assistance of counsel. For the following reasons, we affirm.

Viewed in the light most favorable to the verdict, the evidence shows that at approximately 10:45 p.m. on June 5, 2005, Gibson, a Delta Airlines mechanic, got into an altercation with Vernard Anderson, a Delta customer service agent, while boarding an employee shuttle bus to Delta's employee parking lot at the "B" spine of the airport. The men exited the bus together at the parking lot and got into their respective vehicles. Gibson, who was driving a white Ford F-150 pickup truck with a Butts County license plate, waited for Vernard to exit the lot and then followed him onto I-285 East. After the two vehicles passed the Moreland Avenue exit and approached the exit to I-675, Gibson fired several shots into Vernard's vehicle, and then veered off onto I-675 South toward Butts County. The shots hit Vernard in the hand and shattered his car windows. Vernard testified that he saw flashes of gunfire coming from the driver's side of the truck and described his assailant as a white male, 5 feet 11 inches tall, weighing 200 pounds, with sandy-colored hair, and wearing glasses and a Delta mechanic jumpsuit. He also told police that he thought the vehicle had a Cobb County license plate. Vernard viewed three photographic lineups on three different days, and

---

[11] See *Landers v. State*, 270 Ga. 189, 191 (4) (508 SE2d 637) (1998).

184

tentatively identified Gibson in only one lineup. Vernard never saw Gibson at work following the incident, but identified him at a preliminary hearing and at trial.

Joseph Anderson, a fellow Delta employee, witnessed the altercation between Gibson and the victim at the bus stop, and identified Gibson from a photographic lineup as the man on the bus. Joseph Anderson also identified Gibson at a preliminary hearing and at trial.

1. Gibson first contends that trial counsel was ineffective for failing to file a motion to suppress Joseph Anderson's identification of him in the pretrial photographic lineup, which Gibson contends was impermissibly suggestive. Generally,

> the burden of establishing the ineffective assistance of trial counsel is a heavy one that requires an appellant to establish both that counsel's performance fell below an objective standard of reasonableness, and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different. Regarding this second prong, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings, he must establish a reasonable probability that but for the error, his trial would have ended differently. A failure to make a sufficient showing on either of these prongs will be fatal to a claim of ineffective assistance.[1]

"When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion."[2] In this case, Gibson cannot show that trial counsel's performance was deficient.

A photographic lineup is inadmissible if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification.[3]

> There is a two-step test to determine admissibility: (1) whether there was an impermissibly suggestive photographic identification procedure, and (2) if so, whether

---

[1] (Citation, punctuation and footnote omitted.) *Parker v. State*, 273 Ga. App. 823, 824 (616 SE2d 139) (2005).

[2] (Citation, punctuation and footnote omitted.) Id.

[3] *Standfill v. State*, 267 Ga. App. 612, 615-616 (2) (600 SE2d 695) (2004).

under the totality of the circumstances this resulted in a substantial likelihood of irreparable misidentification.[4]

An identification procedure is deemed impermissibly suggestive when it "is the equivalent of the authorities telling the witness, 'This is our suspect.' "[5]

Jerome Sigur, a senior corporate security representative who investigated the workplace incident on behalf of Delta, testified at trial that he initially focused his investigation on white male mechanics from Cobb County who had worked until 10:45 p.m. on June 5, 2005. According to Sigur, he showed Joseph Anderson an initial photographic lineup, which included white male mechanics from Cobb County, but Anderson did not identify the perpetrator. Sigur assembled a second photographic lineup based upon Anderson's description and including mechanics that worked the evening of June 5, 2005, regardless of county. Anderson picked out photograph 9, which was Gibson's photograph, but remarked, "this is a real old photograph, he does not look like this now. . . . But, . . . that's the guy, that's him." Sigur assembled a third lineup, which included a more recent photograph of Gibson at position 12, and Anderson again picked out Gibson's photograph.

At the motion for new trial hearing, Gibson's expert witness, Dr. Brian Cutler, testified that the lineups were suggestive for several reasons: (1) the photographic array contained multiple suspects; (2) Gibson's photograph and its position changed between the second and third lineups; (3) there was no admonition;[6] (4) many of the "filler photos" did not meet Joseph Anderson's description of the man on the bus; and (5) the procedure used simultaneous presentation, not sequential presentation. On the contrary, trial counsel testified that he did not move to suppress the lineups because he did not think they were suggestive at all, and in fact, he had never seen a lineup containing 14 people.

Gibson contends that the photographic lineups were impermissibly suggestive because all the persons displayed in the lineups were suspects; only four suspects were wearing glasses and only three of those had facial hair; Gibson's photograph was the only one updated in the third lineup and it was transposed from position 9 in the second lineup to position 12 in the third lineup, while the other "fillers" remained in the same position; there was no admonition; Joseph Anderson was not shown the lineup immediately after the

---

[4] (Punctuation and footnote omitted.) Id.

[5] (Citation omitted.) *Pace v. State*, 272 Ga. App. 16, 18 (3) (611 SE2d 694) (2005).

[6] Gibson contends that Sigur should have admonished Anderson that the lineup may or may not contain a picture of the perpetrator and that Anderson did not have to pick anyone.

incident; and Joseph Anderson was not on the highway with the victim and had a limited opportunity to view the suspect on the bus. We do not agree with Gibson that the lineups were impermissibly suggestive.

The record shows that Joseph Anderson had ample opportunity to observe Gibson, at least five to ten minutes, long before any crime took place. As acknowledged by Cutler, Anderson would not have been distracted by "weapon focus" or "crime seriousness." When asked if he got a good look at Gibson's face, Anderson replied, "An excellent look." Sigur showed Joseph Anderson the photographic lineups on June 10, 2005, only five days after the incident. When shown the initial lineup, which did not include Gibson's photograph, Joseph Anderson did not identify anyone. However, when shown the second and third lineups, Anderson immediately picked Gibson's photographs and was confident in his identifications. Anderson also identified Gibson at a pretrial hearing and at trial.[7] Although Gibson's photograph was the only one switched between the second and third lineups, given the other factors, we do not find that this tainted Anderson's identification of Gibson. Lastly, we are not persuaded that Sigur's failure to read the admonition form caused the lineup procedure to be impermissibly suggestive.[8] Both Sigur and Cutler explained that the procedure used by Sigur was a "double-blind" procedure because Sigur did not know the suspect at the time, and that, therefore, Sigur could not have suggested the perpetrator to Anderson or influenced him in any way. Morever, Gibson cannot show that he was harmed by Sigur's failure to read the admonition; that Anderson did not pick anyone when Gibson's picture was not included in the array clearly shows that he was not pressured to pick a picture. Accordingly, trial counsel was not deficient in failing to seek suppression of this evidence as there was no basis upon which counsel could have successfully moved to have the identification suppressed.[9]

2. Gibson next contends that trial counsel was ineffective for failing to file a motion to suppress Vernard Anderson's pre-trial and in-court identifications of Gibson and in failing to consult an eyewitness identification expert.

---

[7] See, e.g., *Standfill*, supra at 616 (2) (witnesses immediately identified defendant when shown lineup and identified him at trial).

[8] See, e.g., *Ivey v. State*, 277 Ga. 875, 876-877 (3) (596 SE2d 612) (2004) (investigating officer's question to eyewitness of whether one of persons pictured in lineup was one that went over counter in restaurant did not render pretrial identification procedure impermissibly suggestive, even though it would have been preferable for officer to give eyewitness standard admonition that lineup may or may not have had picture of perpetrator).

[9] *Parker*, supra at 824-825.

Trial counsel testified at the motion for new trial hearing that he chose not to consult an eyewitness expert or file a motion to suppress Vernard Anderson's pre-trial identifications of Gibson because they were tentative and uncertain, and he identified more than one person. The record shows that defense counsel thoroughly cross-examined Vernard Anderson at trial about his tentative identifications, and that the trial court instructed the jury on identification. "It is clear that trial counsel made a strategic choice not to attempt to suppress the identification evidence, but instead to attack the identification testimony on cross-examination."[10]

Moreover, counsel was not ineffective for failing to move to suppress Vernard Anderson's in-court identifications. Even though Vernard's pre-trial identifications were tentative and uncertain, the record reflects that he observed Gibson on the bus, sitting three or four seats from him, and that he watched Gibson get into his truck and wait at the parking lot exit. Vernard testified that he never saw Gibson at work following the incident, but that he immediately recognized him at a preliminary hearing as the man who pushed him on the bus and then shot at him on the highway. Under the totality of the circumstances, we find that Vernard's in-court identification of Gibson was independent of his pre-trial identifications.[11] Since the in-court identification would have been admissible, trial counsel was not ineffective for failing to move for its suppression.[12]

3. Gibson next argues that trial counsel was ineffective for failing to object or move for a mistrial when Sigur commented on his pre-arrest silence. We disagree.

At trial, Sigur testified that he spoke with a group of mechanics, including Gibson, on the evening following the shooting and asked if anyone owned a Ford F-150 truck. According to Sigur, "no one came forward at that point" nor did Gibson volunteer that he owned the subject vehicle. At the motion for new trial hearing, trial counsel explained that he did not object because Gibson was not being interviewed by a law enforcement officer and he did not want to draw attention to the comment by objecting after it was made.

OCGA § 24-3-36 provides that "[a]cquiescence or silence, when the circumstances require an answer, a denial, or other conduct, may amount to an admission." In *Mallory v. State*,[13] our Supreme Court

---

[10] (Citation and punctuation omitted.) *Frazier v. State*, 263 Ga. App. 12, 15 (3) (a) (587 SE2d 173) (2003).

[11] See *Jennings v. State*, 277 Ga. App. 159, 161 (2) (626 SE2d 155) (2006); *Andrews v. State*, 222 Ga. App. 129, 131 (3) (473 SE2d 247) (1996).

[12] See *McClain v. State*, 284 Ga. App. 187, 190 (4) (b) (643 SE2d 273) (2007).

[13] *Mallory v. State*, 261 Ga. 625 (409 SE2d 839) (1991), overruled on other grounds, *Clark v. State*, 271 Ga. 6, 10 (5) (515 SE2d 155) (1999).

held that any comment on an accused's pre-arrest silence or failure to come forward was far more prejudicial than probative, and, therefore, inadmissible even where the accused has not received *Miranda* warnings and where he takes the stand in his own defense.[14] However, the rule enunciated in *Mallory* has been "limited to a defendant's silence *in the face of questions by an agent of the State* or his failure to come forward *when he knew that he was the target of a criminal investigation.*"[15] In this case, since there was no government involvement in the meeting between Sigur and the group of Delta employees, the subject testimony would have been admissible. "Failure to make a meritless or futile objection or motion cannot be evidence of ineffective assistance."[16]

Even if the testimony had been objectionable, Gibson cannot show that he was prejudiced in light of the fact that the state introduced other evidence showing that Gibson drove himself to the police station in his Ford F-150 and consented to a search of that vehicle.[17]

4. Gibson contends that trial counsel was ineffective for failing to object to testimony by Sigur on hearsay grounds. We do not agree.

Sigur testified that Delta employee John Matthews told him that Gibson owned a Ford F-150, that Gibson had been on the bus the night of June 5, 2005, and that Gibson had been joking about the shooting and how he had the same traits as the alleged perpetrator. Sigur also testified that during the course of his investigation, Gibson admitted that he owned a Ford F-150 truck, but that he was driving his wife's Suburban on the night of June 5, 2005, and that he did not volunteer the information on June 6, 2005, because he was not involved in the incident "and didn't see the necessity in saying anything. . . . [I]f he [had been involved in the incident], then the police would be talking to him and not corporate security." Sigur further testified that Gibson acknowledged joking about the incident. At the motion for new trial hearing, trial counsel testified that he did not object to Sigur's testimony because he wanted the jury to hear that Matthews ultimately stated that he did not believe Gibson was on the bus.

---

[14] Id. at 630 (5).

[15] (Citation, punctuation and footnote omitted; emphasis in original.) *Roebuck v. State*, 261 Ga. App. 679, 684 (4) (583 SE2d 523) (2003). See generally *Cook v. State*, 270 Ga. 820, 823-828 (2) (514 SE2d 657) (1999).

[16] (Punctuation and footnote omitted.) *Cole v. State*, 279 Ga. App. 219, 225 (8) (b) (630 SE2d 817) (2006). See also *McClain*, supra.

[17] See *Lynch v. State*, 280 Ga. 887, 889 (2) (635 SE2d 140) (2006).

> Informed strategic decisions do not amount to [ineffective assistance]. The fact that appellant and his present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that appellant received representation amounting to ineffective assistance of counsel.[18]

In any event, as noted in Division 3, even if counsel's failure to object to Sigur's testimony constituted deficient performance, Gibson himself admitted to Sigur that he worked the evening of June 5, 2005, that he owned a Ford F-150, that he left work at 10:45 and caught the bus at "B" spine, and that he joked about the incident. Accordingly, Gibson cannot show that he was prejudiced.

5. Lastly, Gibson contends that trial counsel was ineffective for failing to call Charlie Staples as a witness because his testimony would have shown Gibson's willingness to cooperate with police. Specifically, Gibson claims that Staples's testimony would have contradicted Detective Ferreira's testimony that Gibson arrived at the police station on June 27, 2005, "out of the blue." Staples would have testified that Gibson came to the police station to allow his guns to be tested, to allow himself to be interviewed, and to submit to a polygraph. This claim is meritless.

At the motion for new trial hearing, trial counsel testified that he initially thought evidence regarding the polygraph was important, but that he changed his mind during the trial because it was not "something that the jury was going to hang their hat on"; there was other evidence of Gibson's willingness to cooperate with police; and he wanted to concentrate on the discrepancies in Vernard Anderson's statements. Counsel testified that "[w]hether he was there to take a polygraph or not to take a polygraph, no polygraph was ever taken."

The record shows that trial counsel elicited testimony about Gibson's willingness to cooperate from Detective Farmer. Farmer testified that Gibson volunteered to bring his firearms when he turned himself in and that he consented to a search of his vehicle. The fact that Gibson came to the police station to take a polygraph test was cumulative of this testimony, and trial counsel's failure to present cumulative evidence does not amount to ineffective assistance.[19]

Additionally, "decisions [regarding] which witnesses to call are strategic and tactical decisions that, after thorough investigation and client consultation, are virtually unchallengeable and do not [require

---

[18] (Citation and punctuation omitted.) Id. at 889 (3).
[19] *Campbell v. State*, 281 Ga. App. 503, 504 (2) (636 SE2d 687) (2006).

a finding of] ineffective assistance [of counsel]."[20] In this case, trial counsel's tactical decision to move on and not to concentrate on Gibson's offer to take a polygraph test was strategic and virtually unchallengeable. Moreover, as the state points out, had trial counsel pursued the issue, the jury may have actually drawn a negative inference from such evidence since Gibson never took the test.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED APRIL 16, 2008 ▮▮▮▮▮▮▮▮▮

*Joseph S. Key*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Daniel J. Quinn, Assistant District Attorney*, for appellee.

---

[20] (Citation and punctuation omitted.) *Oliver v. State*, 278 Ga. App. 425, 429 (3) (c) (629 SE2d 63) (2006). See also *Bly v. State*, 286 Ga. App. 43, 48 (4) (d) (648 SE2d 446) (2007).