**THIRD DIVISION
ELLINGTON, P. J.,
DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 8, 2015**

# In the Court of Appeals of Georgia

A15A1291. TURNER v. THE STATE.

MCFADDEN, Judge.

After a jury trial, Scott Turner was convicted of child molestation and enticing a child for indecent purposes. On appeal, he argues that he received ineffective assistance of counsel, but we find that he has failed to show both deficient performance and prejudice. Turner also argues that the trial court erred by limiting his attempts to show that the victim's mother had threatened to falsely accuse another person of child molestation. We hold that Turner has failed to show an abuse of discretion in this regard. We thus affirm Turner's convictions.

1. *Facts.*

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that the victim was

Turner's stepdaughter, who was 13 years old at the time of trial. The victim testified that while her mother was away from their house, Turner would beckon her into his bedroom. She would remove her pants and underwear and bend over the bed. Turner would remove his pants and underwear, hold the victim by the hips, and rub his penis against her anus. In addition, while they sat on the living room couch, Turner would have the victim fondle his penis and he would fondle her breasts. The victim testified that it happened "a lot," maybe every other day, for a period of two years, and less frequently before that; in total, Turner molested the victim for more than seven years.

Eventually the victim told her father's girlfriend that Turner was molesting her. The girlfriend advised the victim to tell her mother. When the victim told her mother about the abuse, the mother confronted Turner. The victim's mother asked Turner what he had done to the victim, and he responded, "I touched her and I made her touch me." When she asked Turner "if he got off," he responded, "not that [the victim] ever knew." The victim's mother asked the victim, in Turner's presence, when the abuse had stopped, and the victim said earlier that year. Turner corrected her, responding, "uh-uh [negative], it stopped at the Baptist Tabernacle," meaning it had stopped when the family began attending the Baptist Tabernacle at an earlier date.

The mother called the family's pastor and his wife, who came to the residence. She also called the police, and Turner heard that telephone call. Turner kept repeating that he had to go because he could not "go to prison for the rest of [his] life."

The pastor and his wife arrived, and the pastor began speaking with Turner. Turner told the pastor that he had ruined his family. When the pastor's wife asked Turner what he had been thinking, he responded, "I wasn't thinking." Suddenly, Turner fled. The police arrived at the residence and then drove around looking for Turner, but they were unable to find him.

Several hours later, Turner returned to the house, holding a knife and a hammer. The victim's mother attempted to call the police again, but Turner took the phone and asked her to wait until the morning, so they could talk about it. The mother was able to call the police on another phone, and Turner exited the residence. The mother looked outside to see if she could locate Turner, in order to tell the dispatcher his location, and she saw him lying on the ground in the back yard. He was bloody, and the bloody knife was next to him; he had hammered the knife into his leg. The mother told Turner that she really wanted to kill him. He responded that he wished she would. An ambulance arrived. As Turner was carried away on a stretcher, he said,

"Please ask [the victim] to forgive me. I've destroyed my family. I've destroyed my life."

While Turner was in the emergency room, the pastor again spoke with him. Turner told the pastor that he might have molested the victim when changing diapers.

2. *Ineffective assistance of counsel*.

Turner argues that trial counsel provided ineffective assistance by failing to object to improper comments on Turner's pre-arrest silence and by failing to present expert testimony. In order to prevail on his claim of ineffective assistance of counsel, Turner "must show that counsel's performance was deficient and that, but for that deficient performance, there is a reasonable probability that the outcome of his trial would have been different. Moreover, in ruling on an ineffectiveness claim, this [c]ourt need not analyze the deficient performance prong if the [c]ourt determines the prejudice prong has not been satisfied." *Jackson v. State*, 282 Ga. 494, 497 (2) (651 SE2d 702) (2007) (citations and punctuation omitted).

(a) *Failure to object to questions and comments that allegedly concerned pre-arrest silence*.

Turner argues that trial counsel was ineffective because she did not object when the state asked witnesses about Turner's failure to deny the allegations during

their discussions with him before his arrest. He argues that these questions, along with statements made during the state's opening statement and closing argument, violated the "bright-line rule in Georgia that the [s]tate may not comment on either a defendant's silence prior to arrest or failure to come forward voluntarily." *Rush v. State*, 294 Ga. 388, 390 (2) (a) (754 SE2d 63) (2014) (citations omitted).[1] Consequently, Turner argues, those questions and comments about Turner failing to deny the allegations against him were improper and trial counsel rendered deficient performance when she failed to object. See *State v. Sims*, 296 Ga. at 470 (2) (a).

Initially, we reject the state's argument that the comments were admissible under *Gibson v. State*, 291 Ga. App. 183, 187-188 (3) (661 SE2d 850) (2008), because our Supreme Court has overruled the holding in *Gibson*. In *Gibson*, we held that the bright-line rule is "limited to a defendant's silence in the face of questions by an agent of the [s]tate or his failure to come forward when he knew that he was the target of a criminal investigation." Id. at 188 (3) (citations, punctuation, and emphasis omitted). In *Gibson*, we relied on *Roebuck v. State*, 261 Ga. App. 679, 684 (4) (583

---

[1]The rule is based on former OCGA § 24-3-36. Our Supreme Court has "express[ed] no opinion about the continuing validity of [the rule] under the new Evidence Code." *State v. Sims*, 296 Ga. 465, 471 (3) (769 SE2d 62) (2015). But here, as Turner was tried in 2012, the former Evidence Code applies.

SE2d 523) (2003), to support that holding. In *Roebuck*, we, in turn, relied on *Morrison v. State*, 251 Ga. App. 161, 163-165 (3) (554 SE2d 190) (2001). However, in *Reynolds v. State*, 285 Ga. 70 (673 SE2d 854) (2009), our Supreme Court overruled *Morrison*, 251 Ga. App. at 164 (3) and its progeny and reiterated that the state may not comment on a defendant's silence or failure to come forward.

But notwithstanding that rule, we find no reversible error. Several of the comments to which Turner points are permissible comments on his flight rather than impermissible comments on his silence. Several of the comments concerned Turner's failure to answer questions during conversations with witnesses, and therefore were properly the subject of questioning by the prosecutor. And counsel's failure to object to any comments that were improper does not entitle Turner to a new trial, given the overwhelming evidence of his guilt, including his admission that he "touched [the victim] and [he] made her touch [him]."

"[S]tatements about flight are proper as circumstantial evidence of guilt." *Rush*, supra, 294 Ga. at 390 (2) (a) (holding that prosecutor's statement that "the guilty man flees but the righteous man stands bold as a lion," was not an improper comment on defendant's failure to come forward because statements about a defendant's flight are

6

proper as circumstantial evidence of guilt). The prosecutor's comments about Turner leaving the residence before the police arrived were proper.

Turner complains of the state's examination of his wife, the pastor, and the pastor's wife. All three witnesses testified about their conversations with Turner and, in response to the prosecutor's questions, his failure to deny the allegations of child molestation. For example, when the prosecutor was questioning the victim's mother about confronting Turner with the victim's allegations, the mother described the conversation that she had with the victim and Turner. She testified that she asked how long the molestation had been occurring. The victim answered and Turner corrected her answer. The mother testified that she then asked Turner:

> [I]s this true, is this true, and he just hung his head and looked at the floor. And I got up and I put my hands on my hips and I told him, I said, you better tell me something or we're fixing to have a problem. And at that time, he said, okay, let's go into the sunroom.

The instances about which Turner complains are "not squarely governed by the principle . . . prohibiting mention of a defendant's silence or failure to come forward [because Turner] was not silent and did not fail to come forward." *Carter v. State*, 324 Ga. App. 118, 126 (2) (b) (749 SE2d 404) (2013) (where appellant was not silent and willingly talked, rule did not require the exclusion of testimony about her failure

7

to mention certain facts). Rather, he willingly engaged in conversation with his wife, his pastor, and the pastor's wife, making certain admissions, answering certain questions, and supplying detail about the molestation. The testimony of these witnesses about Turner's silence simply highlighted the inconsistencies between what Turner told them and what he failed to say in the same conversations. The testimony was not subject to the bright-line rule. See *Rush*, 294 Ga. at 390-391 (2) (a). See also *Brown v. State*, 167 Ga. App. 61, 63-64 (4) (305 SE2d 870) (1983) (jury "surely was entitled to know" of conflicts in defendant's statements).

Assuming without deciding that other comments and questions about Turner's silence were improper and that trial counsel's performance was deficient for not objecting to them, this deficient performance does not require a new trial. Trial counsel's failure to object to any improper references to Turner's silence did not prejudice his defense in light of the strength of the evidence of his guilt:

> Improper reference to a defendant's silence . . . does not automatically require reversal. . . . [T]he error may be harmless beyond a reasonable doubt. The determination of harmless error must be made on a case by case basis, taking into consideration the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt.

*Al-Amin v. State*, 278 Ga. 74, 85 (15) (597 SE2d 332) (2004) (citations and punctuation omitted). Here, the evidence of Turner's guilt was quite strong and included the victim's testimony, Turner's multiple admissions, and his flight. Given the overwhelming evidence of Turner's guilt, we conclude that he has not shown that, "if trial counsel had objected to the prosecutor's comments, there is a reasonable probability that the outcome of the trial would have been different." *Jackson*, 282 Ga. at 497 (2) (citations omitted).

(b) *Failure to present expert witness*.

Turner argues that trial counsel was ineffective because she failed to present an expert witness to testify about the forensic interview of the victim and the behavioral patterns of sexually abused children. In light of the overwhelming evidence of Turner's guilt, particularly his multiple admissions, Turner has not shown "that, but for counsel's failure to call an expert witness, there is a reasonable probability that the outcome of the trial would have been different." *Vaughn v. State*, 307 Ga. App. 754, 759 (4) (706 SE2d 137) (2011).

3. *False accusation*.

Turner argues that the trial court abused his discretion by refusing to allow Turner to present evidence of a false accusation of molestation. He sought to present

evidence that the victim's mother had threatened to falsely accuse the victim's father of molesting the victim if he did not give her custody or child support. But Turner did not make the requisite showing.

Before evidence of false accusations may be admitted, "the trial court is required to make a threshold determination outside the jury's presence that a reasonable probability of falsity exists." *Osborne v. State*, 291 Ga. App. 711, 713 (2) (662 SE2d 792) (2008) (citation omitted). The defendant has the burden of coming forward with evidence at the hearing to establish a reasonable probability that the accusation is false. *Clements v. State*, 279 Ga. App. 773, 774 (2) (632 SE2d 702) (2006). For the purposes of this appeal, we will assume that a *threat* of making a false accusation of sexual misconduct is admissible in the same way that a false accusation itself is admissible. But see *Pollio v. State*, 278 Ga. App. 729, 730-731 (1) (629 SE2d 583) (2006) (affirming exclusion of victim's statement, which defendant claimed was a false accusation of sexual misconduct, because, inter alia, "statement was not an allegation of sexual misconduct"). Here Turner has not met his burden of establishing a reasonable probability that the accusation was false. Although counsel informed the trial court that she could present testimony "from other witnesses that [the victim's mother] had made a statement that she was going to accuse [the victim's father],"

10

counsel did not identify those witnesses – or even seek a ruling on the issue of falsity from the trial court. Turner has not shown that the trial court abused his discretion in excluding this evidence. Id. at 731 (1) (citation omitted).

*Judgment affirmed. Ellington, P. J., and Dillard, J., concur*.