**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 20, 2022**

# In the Court of Appeals of Georgia

A22A0273. HERRING v. THE STATE.

PINSON, Judge.

Charles Keith Herring was convicted of sexual exploitation of a child for possessing a digital image file of the uncovered genitals of his pre-pubescent daughter. On appeal, he contends that (1) the trial court erred by admitting statements he made to police after he invoked his right to remain silent; (2) the trial court erred by denying his motion for directed verdict because the crime described in the indictment varied from the proof offered at trial; and (3) his trial counsel rendered ineffective assistance of counsel in several ways.

We affirm. The trial court correctly rejected Herring's *Miranda* argument because taken in context, the statements he relies on—"I'm done.... I want this done. I want us to get through this. I want to find out who the F is doing this."—did not

clearly and unambiguously invoke his right to remain silent. Herring's indictment-variance argument is moot because he was not sentenced on the count for which the indictment allegedly varied from the proof at trial (that count was merged for sentencing). And for reasons we discuss below, he has not met the heavy burden required to establish that his counsel rendered constitutionally ineffective assistance.

## Background

*(a) Factual Background*

Acting on a tip from Google, an investigator with the Georgia Bureau of Investigation's child exploitation and computer crimes unit obtained a search warrant for Herring's Google accounts. Google provided a trove of electronic information in response. In addition to Herring's resume, a recent tax return, and identifiable photos of Herring, the data from his accounts included a digital image of a prepubescent child's vagina with a man's penis slightly touching or penetrating it, and a second digital image of a prepubescent child's vagina in which it was apparent that the child was wearing a red or pink shirt and was sitting or kneeling on colorful rug. Those two photos were introduced at trial as State's exhibits 1 and 2, respectively. Other photos, similar to exhibit 2, showed more of the rug and other household items in the

background. Those other photos were introduced as exhibits 3-20 and 23. Investigators determined that all of the photos depicted the same child.

Investigators visited the home of Herring's ex-girlfriend, J. F., where they saw many of the same items that were visible in the photos. J. F. confirmed that the photos were taken in her home and that the child in the photos was A. F., her daughter with Herring. At the time the photos were taken, J. F. was no longer living with Herring, but Herring would come to J. F.'s home once a week to watch A. F. while J. F. was at work.

Based on this investigation, Herring was indicted on two counts of sexual exploitation of children under OCGA § 16-12-100 (b) (for creating and possessing the images in exhibits 1 and 2) and two counts of child molestation under OCGA § 16-6-4 (a) (for committing the acts depicted in the images in exhibits 1 and 2).

*(b) Trial Proceedings*

Before trial, Herring moved to exclude from evidence a portion of his interview with police on the ground that his statements after a certain point were not voluntary because he had told police he wanted the interview to stop. The trial court held a

3

*Jackson-Denno*[1] hearing to address the issue, during which the trial court read the following relevant portion of the interview transcript:

> THE COURT: All right, so I'm reading this and in context this is what he says:
>
> [HERRING:] Now, look, I'm done.
>
> [OFFICER:] What do you mean you're done?
>
> [HERRING:] I want this done.
>
> [OFFICER:] You want this done?
>
> [HERRING:] I want this done. I want us to get through this. I want to find out who the F is doing this.

The trial court found that, in that excerpt, Herring "essentially says he wants to continue. He doesn't say, I want to stop, I want to exercise my rights, I want to remain silent, or I want a lawyer." The trial court therefore found that Herring knowingly and voluntarily waived his right to remain silent and voluntarily participated in the interview.

---

[1] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

After the State rested, Herring moved for a directed verdict. Among other things, Herring contended that Count One of the indictment was "in error" because it did not match the offense charged: Count One described an image "depicting a portion of a *minor's* body engaged in physical contact in an act of apparent sexual stimulation and gratification with the unclothed genitals of a prepubescent female" (emphasis supplied), but the image that Herring was charged with possessing, exhibit 1, depicted an *adult* with a prepubescent female. Herring's counsel asserted that she had twice visited the offices of the prosecution in an attempt to determine what photos her client was charged with possessing, but that the State never specified which photo, of the "thousands of pictures" taken from Herring's Google accounts, corresponded to Count One. Rather, counsel was told only that "it's in there." The trial court acknowledged it was a "close question," but denied the motion, finding that Herring "was sufficiently informed as to the charge against him, that he was able to present his defense and that under these circumstances he was not taken by surprise by the evidence presented at trial."

Herring was convicted on Counts One and Two (sexual exploitation) and acquitted on Counts Three and Four (child molestation). The sexual exploitation counts were merged for sentencing, see *Edvalson v. State*, 310 Ga. 7, 10 (849 SE2d

5

204) (2020) (holding that OCGA § 16-12-100 (b) "permits only one prosecution and conviction for the simultaneous possession of multiple items of 'visual media'") (footnote omitted), so Herring was sentenced only on Count Two. The trial court imposed a sentence of 20 years, with the first 19 years to be served in prison. Herring appealed.

Discussion

1. Under *Miranda v. Arizona*, 384 U. S. 436, 474 (III) (86 SCt 1602, 16 LEd2d 694) (1966), people in custody have a "right to cut off questioning." But to invoke that right, the person in custody must "clearly and unambiguously state[] that he wants to end a custodial interrogation." *Causey v. State*, 307 Ga. 147, 148 (2) (834 SE2d 857) (2019) (citing *Berghuis v. Thompkins*, 560 U. S. 370, 381-82 (III) (A) (130 SCt 2250, 176 LE2d 1098) (2010)). Without that clear statement, "a police officer is under no obligation to clarify or to stop questioning." Id. at 149 (2) (citations and punctuation omitted).

Here, Herring contends that he invoked his right to remain silent during his custodial interrogation when he told police, "Now, look, I'm done." But we agree with the trial court—whose factual findings and credibility determinations we accept absent clear error, *Cheley v. State*, 299 Ga. 88, 90 (2) (786 SE2d 642) (2016)—that

6

Herring did not clearly ask the police to stop questioning him. After Herring said "[n]ow, look, I'm done," the officer asked him to clarify, and Herring explained, "I want this done. I want us to *get through this*. I want to find out who the F is doing this." As the trial court concluded, far from suggesting that he wanted to end the interrogation right then, these statements indicated to the officers that he wanted to continue the interrogation. So the trial court did not err in finding that Herring did not unambiguously invoke his right to remain silent. See, e. g., *Brown v. State*, 304 Ga. 435, 440 (2) (b) (819 SE2d 14) (2018) (defendant who "repeatedly said he wanted to finish the interview" did not unambiguously invoke his right to remain silent); *Cheley*, 299 Ga. at 90-91 (2) (defendant who told police "I'm completely finished," but then continued answering questions, did not unambiguously invoke his right to remain silent); *Weaver v. State*, 288 Ga. 540, 544 (4) (705 SE2d 627) (2011) (defendant who told police, "I don't want to say nothing. There's just so much to say," did not unambiguously invoke his right to remain silent). Compare *Mack v. State*, 296 Ga. 239, 240, 242-43 (1) (765 SE2d 896) (2014) (defendant who repeatedly told police he was "done" and that he "[had] no more to say," and who stood up and told police, "let's ride," unambiguously invoked his right to remain silent).

7

2. Herring next contends that the trial court erred in denying his motion for a directed verdict on Count One based on a fatal variance from the indictment. This argument is moot because the conviction on Count One was merged for sentencing and Herring was sentenced only on Count Two. See *Cromartie v. State*, 348 Ga. App. 563, 565 n.2 (1) (a) (824 SE2d 32) (2019) (trial court's denial of a directed verdict on one charge was moot because defendant was not sentenced on that count); *Nelson v. State*, 224 Ga. App. 623, 624 (4) (481 SE2d 605) (1997) (same); see also *Rosser v. State*, 308 Ga. 597, 599 (1) (842 SE2d 821) (2020) (holding that challenges to sufficiency of evidence on several counts were moot because they were either vacated by operation of law or merged into other counts for sentencing).

3. Herring also contends that his counsel was ineffective in several respects. To prevail on a claim of ineffective assistance of counsel under the Sixth Amendment, a defendant must establish both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Stafford v. State*, 312 Ga. 811, 819 (3) (a) (865 SE2d 116) (2021) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LEd2d 674) (1984)). To establish deficient performance, the defendant must demonstrate that counsel "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of

8

prevailing professional norms." *Anthony v. State*, 311 Ga. 293, 294-95 (1) (857 SE2d 682) (2021) (citation and punctuation omitted). There is a "'strong presumption'" that counsel acted reasonably, so the defendant must show that "'no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not.'" Id. at 295 (1). And to show prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Shelton v. State*, ___ Ga. ___ (3) (b) (859 SE2d 377) (2022) (citation and punctuation omitted). A reasonable probability is a probability sufficient to "undermine confidence in the outcome." Id. (citation and punctuation omitted). We address each of Herring's ineffectiveness arguments in turn.

(a) Herring first contends his counsel was ineffective for failing to file a speedy trial demand. This claim fails. "Whether to file a demand for speedy trial is usually a matter of trial tactics and strategy, as a delay in bringing the case to trial may work to [the] defendant's advantage." *Jones v. State*, 296 Ga. 561, 569 (6) (769 SE2d 307) (2015). And as with other strategic decisions, trial counsel's decision to file, or not file, a demand for speedy trial "should not be evaluated in hindsight." Id. Accord *Napier v. State*, 276 Ga. 769, 776 (8) (583 SE2d 825) (2003), disapproved on other grounds by *Shelton v. Lee*, 299 Ga. 350, 355-56 (2) (b) (788 SE2d 369) (2016). Here,

Herring offers no testimony from his trial counsel, nor any other type of evidence, to overcome the presumption that his counsel's failure to file a speedy trial demand was a reasonable strategic decision. Nor does he show how the outcome of his trial might have been different if counsel had demanded a speedy trial, as he must do to show prejudice. See *Henderson v. State*, 310 Ga. 231, 243 (3) (a) (850 SE2d 152) (2020) (defendant failed to show prejudice when he did not demonstrate "a reasonable probability that had his counsel filed a proper speedy trial demand, his trial's *outcome* would have been different") (emphasis in original).

(b) Herring argues his trial counsel was ineffective for failing to challenge the State's assertion that the photos in evidence were "actually downloaded and viewed by Mr. Herring," either by making an objection or by retaining an expert. But Herring again points to no evidence to rebut the presumption that counsel's decision not to object or retain an expert was the product of reasonable trial strategy. See *Brown v. State*, 356 Ga. App. 516, 524 (4) (848 SE2d 126) (2020) (performance of counsel presumed to be "within the wide range of reasonable professional lawyering" unless defendant rebuts the presumption by "clear and convincing evidence") (citation omitted). Nor does he offer any suggestion as to what an expert would have opined. See *White v. State*, 293 Ga. 635, 636-37 (2) (748 SE2d 888) (2013) (defendant not

10

prejudiced by counsel's failure to retain expert when he offered no evidence as to what the expert would have opined). And given the overwhelming evidence that Herring possessed the photos—the photos were retrieved from Google accounts associated with Herring that also contained Herring's resume and tax returns and photos of Herring —he cannot show that he was prejudiced by counsel's decisions, either. See *Tucker v. State*, 355 Ga. App. 796, 803 (4) (c) (845 SE2d 759) (2020) (defendant not prejudiced by counsel's failure to retain expert when evidence of guilt was overwhelming); *Turner v. State*, 334 Ga. App. 515, 519 (2) (b) (778 SE2d 257) (2015) (same).

(c) Herring next argues that his trial counsel's case load of "between 230 and 250 felony cases" rendered her unable to render effective assistance. But Herring has offered no evidence that his counsel's case load affected the amount of time she *actually* devoted to his case, see *Whatley v. Terry*, 284 Ga. 555, 561-62 (III) (668 SE2d 651) (2008) (declining to presume prejudice based on counsel's heavy case load because "it is the amount of time *actually* spent by [counsel] on [the defendant's] case that matters, not the number of other cases he might have had that *potentially* could have taken his time") (emphasis in original), much less that counsel's case load affected the outcome of the trial, see *Wood v. State*, 304 Ga. App. 52, 54-55 (3) (c)

11

(695 SE2d 391) (2010) (rejecting claim of ineffective assistance based on counsel's heavy case load because defendant did not show a reasonable probability that jury would have acquitted if counsel had more time to devote to her case). His claim of ineffective assistance on this ground fails as well.

4. Finally, Herring contends that his prosecuting attorney was subject to a conflict of interest because Herring's first trial counsel left the public defender's office and joined the district attorney's office. But Herring offers no evidence that his former counsel personally participated in his prosecution; instead, he appears to argue that the entire district attorney's office should have been "disqualif[ied]." No authority that we know of supports that position. A defendant "has the burden of showing an *actual* conflict." *Johnson v. State*, 320 Ga. App. 161, 165 (4) (739 SE2d 469) (2013) (emphasis supplied). The mere fact that Herring's former counsel worked for the district attorney's office in some capacity is not enough to show an actual conflict. See *Lytle v. State*, 290 Ga. 177, 179 (2) (718 SE2d 296) (2011) (defendant did not demonstrate actual conflict when multiple co-indictees with adverse interests were represented by the same public defender's office).

*Judgment affirmed. McFadden, P. J., and Gobeil, J., concur.*